# CASES

# SUPREME JUDICIAL COURT

# STATE OF MAINE.

---◆---

### ARTHUR LOVEGROVE *vs.* GEORGE S. HUNT.

*Manufacturing corporations—individual liability of stockholders.*

By R. S. of 1857, c. 48, § 9, manufacturing corporations are prohibited to contract debts exceeding, at any one time, the amount of their capital invested within the State in real estate and fixtures thereon, including machinery; and from becoming indebted to an amount exceeding one-half their capital paid in and remaining undivided, and of their other property and assets. When they comply with these prohibitions and limitations, their stockholders are relieved from all individual liability for their debts. When either of these limitations is violated, their stockholders become individually liable for debts of the corporation in the manner provided in c. 46.

The liability arising under c. 48, § 9 is to be made available to creditors of the corporation in the manner prescribed in c. 46, § 24.

ON EXCEPTIONS.

CASE against a stockholder of the Portland Shovel Manufacturing Company, chartered Feb. 28, 1863, to recover the amount of his individual liability under R. S. of 1857, c. 48, § 9.

The writ contained six counts, the first of which alleged, substantially,

That the plaintiff, on October 28, 1867, recovered judgment against the Portland Shovel Manufacturing Company, a manufacturing corporation, having its place of business in Portland, for

$18,108.48 debt, and $21.87 costs; that the execution, issued on the judgment, was, on Jan. 1, 1868, levied on the right in equity which the Shovel Company had of redeeming a certain parcel of land, situated in Portland, and the judgment satisfied in part, to wit, for the sum of $274.34; and, for want of other attachable property of the corporation, the execution was returned satisfied in part only.

That on March 6, 1868, the plaintiff demanded of the defendant, who, at the time the original indebtedness on which the judgment was founded accrued to the plaintiff, was, and ever since has been, a stockholder in the corporation, to disclose and show attachable property of the corporation, sufficient to satisfy the execution; that the defendant did not then, nor has he since, disclosed attachable property of the corporation sufficient to satisfy the execution; and that the judgment is in full force.

That the Portland Shovel Manufacturing Company is a manufacturing company, incorporated by the legislature of this State, after the first of January, 1858, and is not a banking corporation, nor a corporation for literary or benevolent purposes; that the defendant, at the time of the original indebtedness upon which the judgment was founded, was, and still is, a stockholder in the Portland Shovel Manufacturing Company, and then was, and ever since has been, the owner of seven shares of the capital stock thereof, of the par value of one hundred dollars for each share; that the corporation has not complied with the prohibitions and limitations of the statutes of this State relating to manufacturing corporations; but has contracted debts exceeding, at one time, the amount of its capital invested within the State, in real estate and fixtures thereon, including machinery; [and have become indebted to an amount exceeding one-half of their capital paid in and remaining undivided, and of its property and assets;] whereby the defendant has become individually liable for the debts of said corporation (to an amount equal to the par value of his said stock therein), and an action has accrued to the plaintiff to have and recover of the defendant the amount of seven hundred dollars.

The second count is same as the first omitting the clause within the brackets.

The third count is same as the first omitting the clause next preceding the clause within the brackets.

The fourth count, after setting out the recovery of the judgment and levy as in the first, then alleged, substantially,

That the plaintiff, on March 5, 1868, purchased an alias execution upon the judgment, which was placed in the hands of a deputy-sheriff, named, who made the following return thereon:

CUMBERLAND, SS.:                                         March 6, 1868.

I hereby certify, that James D. Fessenden, as attorney to the within-named creditor, on the days and at the places herein below mentioned, made demand in my presence upon each of the following named persons, who were stockholders in the within-named Portland Shovel Manufacturing Company, at the time the within-named debt accrued, and ever since have been and now are stockholders in said corporation, to disclose and show attachable property of said corporation sufficient to satisfy this execution; that I had said execution in my hands for collection and service, and then and there exhibited it to each of said stockholders (the former execution having been returned into the clerk's office of the within-named court, unsatisfied for want of attachable property of said corporation, except for the sum of two hundred and seventy-four dollars and thirty-four cents), and each of said stockholders then and there neglected and refused to disclose and show sufficient attachable property of said corporation, viz., George S. Hunt . . . and for want of attachable property of said corporation, I return this execution in no part satisfied,                                         (Signature),
as by the execution and officer's return thereon appears.

That after the return of the first execution, in part unsatisfied for want of attachable property of such corporation, to wit, on March 6, 1868, the plaintiff made demand of the defendant, who, at the time the original indebtedness upon which said judgment was founded accrued to the plaintiff, was, and ever since has been, a stockholder in the corporation, to disclose and show attachable prop-

erty of said corporation sufficient to satisfy said execution; and that the said defendant did not then, nor has he since, disclosed attachable property of said corporation sufficient to satisfy said execution, and neglected and refused, and still neglects and refuses so to do; that said judgment is in full force, and not reversed, annulled, or satisfied, except as aforesaid.

That said Portland Shovel Manufacturing Company is a manufacturing company, incorporated by the legislature of this State, after the first day of January, A. D. 1858, and is not a banking corporation, nor a corporation for literary or benevolent purposes; and that the defendant, at the time the original indebtedness upon which said judgment was founded, was, and still is, a stockholder in said Portland Shovel Manufacturing Company, and then was, and ever since has been, the owner of seven shares of the capital stock thereof, of the par value of one hundred dollars per share, and all of the value of seven hundred dollars; and that the said corporation has not complied with the prohibitions and limitations of the statutes of this State relating to manufacturing corporations, but have contracted debts exceeding, at one time, the amount of their capital invested within the State, in real estate and fixtures thereon, including machinery, and have become indebted to an amount exceeding one-half of their capital paid in and remaining undivided, and of their other property and assets; whereby this defendant has become individually liable for the debts of said corporation (to an amount equal to the par value of his said stock therein), and an action has accrued to this plaintiff to have and recover of the defendant the amount of the aforesaid execution still remaining unpaid, or the deficiency thereof, not exceeding the amount of his stock, viz., seven hundred dollars.

The fifth count is same as fourth, with the same words omitted as in the second.

The sixth count is same as the fourth with the same words omitted as in the third.

To this declaration the defendant filed a general demurrer at the first term, which was joined by the plaintiff.

Lovegrove *v.* Hunt.

The presiding judge sustained the demurrer, *pro forma*, and adjudged the declaration bad, and the defendant alleged exceptions.

*J. D. & F. Fessenden*, for the plaintiff.

1. Plaintiff is entitled to this action. R. S., c. 48, § 9; R. S., c. 46, §§ 25, 26, 27; Public Laws of 1859, c. 76; Charter of Portland Shovel Manufacturing Company, Private Acts of 1863, c. 236.

Reference in c. 48 to c. 46 is to the remedy, not to the extent of stockholders' liability.

2. The individual liability, imposed by c. 48, is not affected by c. 46, § 24.

The latter part of said section, relieving stockholders from all liability beyond the loss of their stock, applies only to such stockholders as are liable by the first part of the same section.

There is no liability imposed on stockholders in manufacturing corporations by that section, as they are exempted by a general law of the State. Laws of 1856, c. 271; *Milliken* v. *Whitehouse*, 49 Maine, 529.

3. The liability of stockholders in manufacturing corporations is radically distinct from that provided in c. 46, § 24.

*W. L. Putnam*, for the defendant.

I. In equity, stockholders are holden to make up, in behalf of creditors, capital withdrawn or not paid in. This principle has been reaffirmed in our statutes in many places. R. S., c. 46, §§ 24, 34; R. S., c. 49, §§ 9, 11.

This is just, since the credit given corporations is given upon their apparent capital as the fund from which creditors are to be paid.

Further than as above creditors have no equity, and can claim only by positive provision of statute. *Gray* v. *Coffin*, 9 Cush. 199.

II. The legislation in this State on this matter has been substantially as follows:

1. By the statutes of 1821, stockholders in insurance companies were made liable on the equitable principles above stated. Ch. 139, §§ 2, 7.

And stockholders in banks, whose liability has always been considered a peculiar one, to the extent of their stock for bills and deposits.   Ch. 145, § 4.

And in manufacturing corporations *in solido.*   Ch. 60, § 31.

2. By statute 1836, c. 200, afterwards codified in 1840, c. 76, § 18, the liability was reduced to amount of stock and extended to all corporations.

3. In 1841 a party with more liberal views came into power, and by c. 192, stockholders in manufacturing corporations were exempted from liability when the debts did not exceed one-half of the paid up capital.

4. In 1843, c. 16, the liability of such stockholders was again revived to the amount of the stock without exception.

5. In 1844, c. 109, such stockholders and none other were again made liable *in solido,* subject, however, to certain exceptions, which, if complied with, exempted them entirely, and which were similar to those contained in the statute of 1841, and which with some amendments are codified in R. S., c. 48, § 9.

All the above statutes were many times amended in details which need no mention.

6. In 1856, c. 271, all corporations were placed substantially on the same footing, banks excepted. *Vide Hathorn* v. *Calef,* 53 Maine, 484–5, for the meaning of the clause : " unless otherwise excepted in their charter, etc." Stockholders in manufacturing corporations were no longer liable *in solido ;* but they retained the privileges given them by the statute of 1844. *Vide Hathorn* v. *Calef, supra.* When the conditions of that act were not complied with, they became liable for an amount equal to their stock.

The disastrous effect of all the above legislation on our manufacturing interests, were as sure as would be the like effect of a decision of this court in favor of plaintiff in this suit. Even the statute of 1856 was exceedingly unjust and impolitic in a State where the lack of private capital compels the formation of corporations and encouragement to foreign capital, and where most manufacturing corporations are formed as much for local improvement as for indi-

vidual profit. Even the provision of entire exemption, where the corporation does not become indebted beyond certain amounts, is of no avail, as many stockholders can have no practical control of the operations of a corporation, and all would be deterred from venturing their personal liability on conditions practicably beyond their direction.

7. In 1857, c. 58, the whole matter was put on a correct basis, and all stockholders in the corporations, except banks, whose stock remained all paid up, were thenceforth relieved from personal liability. *Whitney* v. *Hammond*, 44 Maine, 320.

Thus after many struggles and bitter experience on the part of those who were laboring for the manufacturing advancement of Maine, this just result was reached, which no one will deny was in 1857 and has been ever since, in accordance with the views of the great mass of the people. And no argument is necessary to support the allegation, that, under the circumstances, nothing but the clearest and most specific language would induce any one to believe that the legislature has intended to change the principle of the law of 1857.

III. The act last referred to was approved April 15, 1857, to go into practical effect June 1, 1857.

Before the latter date, the revision of 1857 was passed, and approved April 17, 1857, to go into effect Jan. 1, 1858. *State* v. *Hobbs*, 39 Maine, 214; *Hughes* v. *Farrar*, 45 Maine, 72.

On this particular point the commissioners' revisions can throw no light, as they were both prior to the passage of this statute.

But the general repealing act of 1857, repealed by express mention, c. 58, of act of 1857; so it was not overlooked.

The purpose of that repealing act was limited by its title to repealing such acts as had been " consolidated, etc."

The second section expressly provides that the " repeal of the acts aforesaid does not revive any of the acts repealed by them." Yet plaintiff claims that the act of 1856 was revived contrary to this provision of the statute.

Sect. 3 declares, " the following acts are not included in the Re-

vised Statutes," etc., and "are not thereby repealed," thus giving a reason which embraces the implication that the others were repealed because included.

Now the statute of 1857, c. 58, was clearly reënacted in R. S., c. 46, § 24. Even the exception relating to banks was carefully retained. The words in the same section: " unless otherwise specified in their charter, etc.," we have already explained the meaning of, and were a part of the act of 1856, c. 271, which was also codified in the revision, because it was to remain in force to describe rights existing prior to Jan. 1, 1857, and the remedies therefor.

Now stopping with c. 46, it would not be claimed that any change had been made in the law. The statute of 1856 was codified there to cover debts incurred previous to June 1, 1857, and that of 1857 for those incurred on and after that date.

Plaintiff, however, relies on c. 48, § 9, which perhaps is inaptly expressed; but in connection with the great fact that the whole book is a codification, is sufficiently clear in its application.

The fact that it alludes at all to any limit of indebtedness unexplained by the history of cognate legislation, would leave an implication that where the corporation indebtedness exceeded the limitation, there was individual liability beyond that of loss of stock as provided by statute 1857, c. 58.

The true construction of the section is this:

It refers to c. 46. Now on turning to that we find codified the statute of 1857, fixing one degree of liability for debts incurred on, or after June 1, 1857; and we find in the same section codified the law of 1856, fixing a different degree of liability for debts incurred prior to that date.

Under the statutes as they stood in 1856, and for debts contracted previous to June 1, 1857, stockholders in manufacturing companies were favored, and were entirely relieved, when there was a compliance with certain provisions of law limiting the indebtedness of the corporation. Hathorn v. Calef, supra.

When, therefore, the general liability, fixed by statute of 1856, was codified in the general chapter on corporations, it became nec-

essary to codify the exceptions existing in 1856, in favor of manu-
facturing corporations, in the chapter relating specially to manufac-
turing corporations. When c. 46 should be called into action with
reference to old debts, c. 48, § 9 would find reason for the full ap-
plication of all its provisions; but so long as the reference was only
to debts incurred on or after June 1, 1857, section 9 would remain
quiescent. In this way only, the expression therein, viz., "in the
manner provided in c. 46, could be understood; as the "manner"
of liability described in that chapter varied as dates varied.

But it may be asked why was section 9 reënacted, if the only
purpose was to preserve old rights which were already fixed? For
the same reason that statute, 1856, c. 271, was reënacted in c. 46, §
24, and as a necessary consequence thereof, as we have already ex-
plained. The act of 1856, though rendered obsolete as to future
contracts by statute 1857, c. 58, was not thereby in terms repealed,
but remained in force to determine rights previously fixed; and
thereupon with all qualifying statutes relating to manufacturing cor-
porations was properly codified.

IV. But if notwithstanding the probabilities and reason of the
case, the letter of the statute is insisted on, plaintiff stands no
better.

Ch. 48, § 9, says nothing specially about remedy. It does not
provide that the remedy shall be "in the manner provided in c. 46."
Now if it had intended to provide a greater liability than was im-
posed by c. 46, its reference to that chapter would have been nec-
essary for the purpose of pointing out the remedy only. But it re-
fers back entirely for the purpose of determining the "manner" or
"extent" of liability. In doing this it refers to the whole chapter
and no particular portion, section, or portion of section, can be se-
lected as the only part of the chapter referred to, or as giving a
fixed liability, when the liability imposed by the whole chapter is
one varying with reference to the date of the contract.

The language of this part of the same section in Judge Shepley's
revision was as follows: "Stockholders become individually liable
for debts of the corporation *for the time, and to be enforced* in the

manner provided in c. 46, *without the benefit of the limitation of amount.*"

Now that imposes a liability greater in extent than c. 46 now imposes ; and the legislature struck out the last words italicized, without inserting other words to fix any different liability from that fixed by the general law of corporations.

But what is specially noticeable is, that the legislature also struck out the other italicized words, showing clearly that they refused to allow the reference to c. 46, to stand merely for the purpose of determining the form of remedy.

In this case, as also in c. 52, Judge Shepley overlooked the applicability of the law of 1856. The oversight was remedied in c. 48, but apparently not observed in c. 52. *Hathorn* v. *Calef*, *supra*.

Even in the worst state of the law at any time within thirty years, the legislature has always made an express qualification in favor of manufacturing corporations, by exempting them entirely in the manner provided in § 9, c. 48 ; and so it continued, as no one will dispute, to April 15, 1857, when c. 58, already cited, was approved, and till April 17, when the Revised Statutes were approved. But the effect of the plaintiff's position is, that on April 17, two days after the approval of the act relieving all stockholders in all cases, the legislature not only reversed the act of April 15, but reversed the settled policy of years, made that discrimination an injury which had before been a benefit, and entirely relieved all other stockholders except those whom before the State had always favored.

' V. This writ cannot be sustained, as it does not allege any demand to disclose to the officer attachable property.

By the express language of the statute and by the reason of the thing, the defendant is to know to whom he should disclose ; and if to an officer, to have him designated.

The return of the officer is evidence; but setting it out in the writ cannot supply the place of proper allegations. And even that does not show a distinct request to disclose to the officer.

*P. Barnes*, on the same side, elaborately reviewed the past statutes relating to corporations, citing the following:

R. S. of 1841, c. 76, § 18 *et seq.*; c. 78, § 14 (repealed 1844).

Special Laws of 1844, c. 138, approved Feb. 18, 1844, c. 139, approved Feb. 16, 1844.

Public Laws of 1844, c. 109, approved March 21, 1844, c. c. 174, 178, 182, approved March 21, 1844.

Public Laws of 1845, c. 154.

Public Laws of 1850, c. 157, amending c. 109 of 1844, by adding the words "and of their other property and assets."

Public laws of 1856, c. 271, "stockholders of all corporations became liable."

C. J. Shepley's union made in 1856.

Special Laws of 1857, c. 122, § 14, approved April 15, 1857.

Public Laws of 1857, c. 58, exempted stockholders in corporations from personal liability after June 1, 1857. Approved April 15, 1857.

R. S. of 1857, approved April 17, 1857, to take effect Jan. 1, 1858. Ch. 46, § 24, defining and limiting liability of stockholders is in two parts:

1. As to debts incurred prior to June 1, 1857.

2. As to debts incurred after that date.

The second is in substance a transcript of c. 58 of the Public Laws of 1857, approved April 15.

R. S. of 1857, c. 48, § 9, defines liability by referring (in terms of Shepley's revision) to c. 46.

This reference must be understood to carry along with it the discriminations of *ante* June 1, and *post* June 1, which are expressed in § 24, c. 46; Public Laws of 1861, c. 24; of 1862, c. 152, §§ 2, 20.

APPLETON, C. J. The Portland Shovel Manufacturing Company was incorporated by an act, c. 236, approved Feb. 28, 1863, "with all the powers, privileges, and subject to all the duties and liabilities contained in the laws of the State relating to manufacturing corporations."

The general rights, duties, obligations, and liabilities of corporations are prescribed and defined by R. S., 1857, c. 46. But there are various kinds of corporations and for different purposes and objects, as for banking, manufacturing, insuring, etc. In the statutes relating to the corporations, created for special purposes, are found special prohibitions and limitations applicable to each different kind of corporation. The provisions applicable to all corporations, and those to the different corporations for special purposes, are to be construed together. The general provisions apply to all corporations, except when modified by prohibitions and limitations specially applicable to some of the different varieties of corporations. It is obvious that there was no conflict intended between the general and the special legislation. While the general law, as enacted in c. 46, is to be deemed binding as long as it remains without modification, its applicability must obviously cease, when there are other and variant provisions enacted for the different kinds of corporations. In other words, the special laws for a particular species of corporations, when variant from the general law, must be regarded as paramount and withdrawing the kind of corporation to which it applies from the operation of the general law, which would control were it not for this modification.

The statutes as revised in 1857 must be held as being then the true expression of the legislative will. The individual liability of corporators for the debts of the corporation had been the subject of fluctuating and contradictory legislation ; but the final and conclusive will of the legislature is to be found in the revision of 1857, unless where the provisions therein contained have been since modified or repealed.

By R. S., c. 48, relating to manufacturing corporations, § 9: "These corporations are prohibited to contract debts, exceeding at any one time the amount of their capital invested within the State in real estate and fixtures thereon, including machinery, and from becoming indebted to an amount exceeding one-half their capital paid in and remaining undivided, and of their other property and assets. When they comply with these prohibitions and limitations,

their stockholders are relieved from all individual liability for their debts. When either of these limitations are violated, their stockholders become individually liable for debts of the corporation in the manner provided in chapter forty-six."

The object of this provision is apparent. It was to protect the public by making the corporators personally liable for the illegal acts of the officers of the corporation. It was to enforce prudent management under a penalty. It was to compel corporators to look after the doings of the officers of the corporation, and see that they neither neglect their duties, mismanage its funds, nor violate the law. The legislature deemed it more just that the loss resulting from official mismanagement should fall upon those who intrusted the affairs of the corporation to the hands of incompetent, negligent, or dishonest officials, than upon individuals who had nothing to do with their appointment, and who could not enforce their removal, upon those who would not have been benefited by their speculations if prosperous, and should not be injured by them if unprosperous. The influx of foreign capital is desirable, but it is equally desirable that it should look after its own interests. It is not desirable that our own citizens should suffer the penalty which may arise from a violation of law by the foreign capitalist or his agent. Those by whom or by whose agents the law is violated should suffer for such violation rather than those who are free from fault or blame. Such seems to be the will of the legislature, as indicated by this section, in relation to members of manufacturing corporations.

Nor is this to be regarded as changed by the reference to chapter forty-six. The last sentence of § 9 is "when either of these limitations are violated, these stockholders become individually liable for debts of the corporation, in the manner provided in chapter forty-six." The manner relates only to the mode of enforcement. The liability is individual. It is the consequence of and the penalty for violated law. The forty-sixth chapter prescribes the manner of proceeding in the cases within § 24. It is in this manner that the liability arising under § 9 is to be made available to the creditors of the corporation. Adopting this view, there is no conflict between the two statutes.

Lovegrove *v.* Hunt.

But by the terms of c. 46, § 24, the liability of stockholders of corporations is defined, "excepting banking corporations, unless it is otherwise specified in their charter, or by any general law of the State." Now by the general law of the State relating to manufacturing corporations it is "otherwise specified," so that the liability of corporators when "otherwise specified" is specially recognized as different from that provided for in § 24.

The intention of the legislature is to be deduced from a comparison of the two statutes under consideration. The special provision of § 9 is a limitation of the general law. It is a modification of the preceding general law so far as it differs from it. The ninth section of c. 48 was enacted for some purpose. It is unnecessary, unless for the purpose of creating a different liability for manufacturing corporations from that of corporations generally. It means nothing unless it means what it purports,—that is, the imposition of personal liability on corporators, when its prohibitions and limitations are violated. The writ sets forth a violation of the "prohibitions and limitations" of § 9. The demurrer thereto is general. The only specific objection made is that it does not allege any demand to disclose to the officer attachable property. If so, the amendment could be easily made and would be allowed on motion. The return, however, on the execution is made part of the writ, and we think the writ taken as a whole does show a demand upon the defendant to disclose attachable property to the officer having the execution.

*Exceptions sustained.*

KENT, WALTON, BARROWS, DANFORTH, and TAPLEY, JJ., concurred.

---

NOTE.—The same question was very fully examined by Judge Fox, of the United States District Court of Maine, and the same conclusion arrived at in a very able opinion published in the Eastern Argus of March 29, 1871.