WILLIAM CARRIGAN, Admr. *vs.* CLEVELAND S. STILLWELL.

Penobscot.     Opinion January 3, 1905.

*Death by Injury.    Negligence.    Fire Escapes.    Statutes.    Legislative Intention.*
*Construction.    Stat. 1881, c. 50; 1883, c. 121; 1891, c. 89, c. 124;*
*R. S. 1903, c. 28, § 38, c. 89, §§ 9, 10.*

To ascertain the true intention of the legislature in the enactment of a
statute, it frequently becomes necessary to go much further than to ascer-
tain the literal meaning of the language used. As has been frequently
said by courts, a thing within the intention is as much within the statute,
as if it were within the letter, and a thing within the letter is not within
the statute, if contrary to the intention of it.

By R. S. c. 28, sec. 38, " every building in which any trade, manufacture or
business is carried on requiring the presence of workmen above the first
floor," "is required to be provided at all times with suitable and sufficient
fire escapes." *Held:* that although the literal meaning of the word " work-
men " includes anyone who does manual labor, the word could not have
been used by the legislature in this general sense, since a literal construc-
tion of the word would make the statute applicable to a great majority of
the business buildings in any community, some business, requiring the
presence of at least a few persons performing manual labor above the first
floor, being carried on in the great majority of such buildings. And further,
that the statute should be so construed as to make it applicable to a build-
ing in which any trade, manufacture or business is carried on requiring the
presence of workmen in such a number, above the first floor, that because
of their number, escape would be rendered difficult in the case of fire or of
a panic caused by the alarm of fire.

*Held:* also, that this statute is not applicable to a building used as a restaur-
ant on the first floor with a kitchen connected therewith on the third floor,
the business requiring the presence in the kitchen on the third floor of
only three persons, two cooks, and an assistant. There being no sugges-
tion of any fault upon the part of the defendant, the owner of the building,
other than the failure to provide fire escapes, and no claim that he would
be liable for his failure in this respect, except for the statute referred to,
it follows, that a verdict for the plaintiff was erroneous.

See *Same* v. *Same*, 97 Maine, 247.

Motion and exceptions by defendant.    Motion sustained.

Statutory action by the administrator of the estate of Mary F.
Carrigan, his intestate, to recover damages for the death of the said

Mary F. Carrigan, who was burned to death in a fire which destroyed a certain three story building, in Bangor, owned by the defendant, and in which said building the said deceased was employed at the time of her death. The plaintiff alleged that under the statute—now § 38 of chapter 28, R. S. 1903—it was the duty of the defendant to have provided said building with suitable and sufficient fire escapes, outside stairs or ladders, but had neglected and failed so to do. At the trial, the defendant requested certain instructions to be given to the jury, but the presiding justice declined to give the instructions asked for, and the defendant took exceptions. The verdict was for the plaintiff, and thereupon the defendant filed a general motion for a new trial. The motion only was considered by the Law Court.

The case fully appears in the opinion.

*B. J. Dunn, Matthew McCarthy, Forrest J. Martin and H. M. Cook,* for plaintiff.

*C. H. Bartlett and C. F. Woodard,* for defendant.

SITTING: WISWELL, C. J., EMERY, SAVAGE, POWERS, PEABODY, JJ.

WISWELL, C. J. This case has before been to the law court, 97 Maine, 247; at that time upon the defendant's demurrer to the plaintiff's declaration, and the questions then presented and considered were as to the sufficiency of the allegations contained in the declaration. At that time the declaration was held sufficient and the case was sent back for trial. Now, after a trial resulting in a verdict for the plaintiff, the case again comes to the court, the question now presented being, whether the evidence of the plaintiff is sufficient to authorize the maintenance of the action, and to warrant the verdict for the plaintiff. Although the defendant has exceptions, as well as a motion, the case can be better considered upon the motion for a new trial.

On Oct. 16, 1901, the defendant was the owner of a four story business building in the city of Bangor; the first and third floors of this building were in the possession of a tenant who occupied the first floor as a public restaurant, and the third floor for a kitchen in

connection with the restaurant. There were three persons employed in the restaurant whose duties were generally performed in the kitchen on the third floor, the plaintiff's intestate, called "an order cook," a man cook, and another woman who rendered general assistance in washing dishes and in doing other work. The plaintiff's intestate also assisted in the general cooking, sometimes did ironing and other work about the building.

On that day at about the middle of the afternoon, an explosion of gasoline occurred in a room upon the second floor, not occupied as a part of the restaurant, and immediately after, the building took fire and became enveloped in flames and smoke. The plaintiff's intestate, at that time, was ironing at a table in the kitchen, and there were also present the two other employees, the man cook and the woman assistant. After the fire was extinguished, the plaintiff's intestate was found dead in the kitchen, near the place where she had been at work, and where she was last seen alive, her body being severely burned. This building was not provided with fire escapes, as, it is claimed by the plaintiff, it should have been under R. S., c. 28, sec. 38, the section in the present revision of the statutes being the same as it was at the time of the fire. There is no suggestion of any other fault upon the part of the defendant, the owner of the building, and no claim that he would be liable for his alleged failure in this respect, except for the statute referred to.

Under these circumstances, this action was brought by the personal representative of the deceased to recover, for the benefit of the beneficiaries named in the statute, the damages for the pecuniary injuries resulting to them from the death of the intestate, under the Act of 1891, now R. S., c. 89, sections 9 and 10. The defendant raises numerous objections to the sufficiency of the evidence introduced, in many respects, but, in view of our conclusion, it is only necessary to consider the one that goes to the maintenance of the action, viz: That the use of the building at the time of the death of the plaintiff's intestate was not such as to bring it within the application of the statute referred to. That statute is as follows, so far as applicable to the question involved: "Every public house where guests are lodged, and every building in which any trade,

manufacture or business is carried on requiring the presence of workmen above the first story, . . . . shall at all times be provided with suitable and sufficient fire escapes, outside stairs or ladders from each story or gallery above the level of the ground, easily accessible to all inmates in case of fire or of an alarm of fire." The contention of the defense being, that this building was not used for the purposes of any trade, manufacture or business, "requiring the presence of workmen above the first story," within the meaning of the statute just quoted.

To ascertain the true intention of the legislature in the enactment of any statute, it frequently becomes necessary to go much further than to merely ascertain the literal meaning of the language used. "A thing may be within the letter of the statute and not within its meaning, and within its meaning, though not within the letter. The intention of the law maker is the law." *Smythe* v. *Fiske,* 23 Wall. 374. "It has been repeatedly asserted in both ancient and modern cases, that judges may in some cases decide upon a statute in direct contravention of its terms; that they may depart from the letter in order to reach the spirit and intent of the act. Frequently, it has been judicially said, that 'a thing within the intention is as much within the statute, as if it were within the letter, and a thing within the letter is not within the statute, if contrary to the intention of it'." Peters, C. J., in *Holmes* v. *Paris,* 75 Maine, 559. "The results of any particular construction are to be anticipated, and if such results will be anomalous, unjust or inconvenient, it is a legitimate and strong argument against the construction contended for. It will be presumed the legislature did not intend any such results. The language of a statute would need to be very strong and clear to cause the belief that such was the intent. The real meaning of the statute is, to be ascertained and declared even though it seems to conflict with the words of the statute. Emery, J., in *Landers* v. *Smith,* 78 Maine, 212." All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence." *United States* v. *Kirby,* 7 Wall. 482.

Applying this familiar principle, so well illustrated by the few

preceding quotations, we come to the question of the construction of this particular statute, for the purpose of ascertaining the true intent and meaning of the legislature in its enactment. The words of the statute, "in which any trade, manufacture or business is carried on," are apparently as broad and inclusive as could have been adopted. They mean more than the language of some similar statutes in other states, "workshops or factories," and, so far as this portion of the statute is concerned, must include any business of any nature, but, of course, the other element, made necessary by the statute must exist, that is, it must be a business requiring the presence of workmen above the first floor. Apparently it did require the presence in the kitchen on the third floor of two cooks and a woman who did general work in washing dishes, and who rendered general assistance in other ways. So that the question is, are employees who are doing work of this nature and of this number, "workmen" within the meaning of the statute?

If the statute could be so construed as to apply to buildings used as this was, it would lead to anomalous and almost absurd consequences. If these employees, to the number of three only, doing this kind of work, are workmen within the meaning of the statute, we do not see why two or three barbers in a barber shop, or an equal number of typewriters in a lawyer's office, or dentists in a dentist's office, in any building above the first floor, or why even the same number of sewing women in a dressmaker's room on the second floor of a story and a half house in a country village, would not equally come within the meaning of this word in the statute. We think that it could not have been the intention of the legislature to have required fire escapes upon all buildings in which any of these various trades or occupations are carried on, irrespective of other qualification. If such is the true construction, it would include almost every building of every kind in any city, town or village, except private residences, because in a vast majority of business buildings, some trade, manufacture or business is carried on above the first floor requiring the presence of at least a few persons doing work of some nature. So that, although the literal and general meaning of the word "workmen" includes any one who does manual

work, we do not think that the word was used in the statute in this general sense, and that, while it does mean something more than the word "operatives", it was not intended to apply to a building used as this was where a very limited number only of persons were required to be engaged in work above the first floor.

In its most literal sense, even, the word used in the statute means more than one workman, and there can be no reason why the legislature should have intended to require this safeguard for two persons and not for one. We think, that the statute should be so construed as to be applicable to a building in which any trade, manufacture or business is carried on requiring the presence of employees in such a number, that, because of their number, escape would be rendered difficult in the case of fire or of a panic caused by the alarm of fire. The same section provides that the fire escapes shall be easily accessible in the case of fire or of an alarm of fire. While the absence of a fire escape might be the cause of the death of a person where only one person was engaged in work in the upper story of a building, in case of a fire, it would be quite as apt to be so in the case of a person on one of the upper floors of a private residence. But it does not seem to have been the purpose of the legislature to require this safeguard against danger in all cases, but only in those that were particularly dangerous by reason of the number of persons necessarily at work in the upper story of the building.

We appreciate that this construction may be subject to the criticism that it is indefinite, but it is a question as to which it is impossible to lay down in advance a general rule which will be applicable to all cases. The circumstances of a great majority of cases will, perhaps, clearly place them upon one side or the other of the line, while some may be so close as to make it exceedingly difficult to determine upon which side they fall. The question must be determined in each case as it arises. We can only say that in this case, in our opinion, the use of the building was not such as to bring it within the statute.

Our views are strengthened by the history of this legislation: The first act of the legislature requiring fire escapes upon private buildings used for certain purposes was Chap. 50 of the Public Laws of 1881, the language of that act, so far as applicable to buildings of

this character, was, "and all shops, mills, factories and other buildings, more than two stories in height, in which any trade, manufacture or business is carried on which requires the presence of workmen *or other persons,* in any part of the building above the first story," etc.    In Public Laws of 1883, Chap. 121, the statute was somewhat modified, but not at all so far as it related to buildings of this character, the words "or other persons" being retained.    In the Revision of 1883, these words were still retained, but in 1891, Public Laws, Chap. 89, this section was again modified, and, although changed in no other respect as to such buildings, the words "and other persons" were omitted.

We regard this amendment as of considerable significance.    Before, fire-escapes were required upon all buildings used for the purposes of trade, manufacture or business, which required the presence of workmen above the first floor, or which required the presence of persons other than workmen.    As the statute then existed, it was as broad and inclusive as it could well be made, except that it was only applicable where the presence of workmen or others, was required by the business carried on.    The statute as it existed prior to the amendment of 1891, would have been applicable to this building, since the plaintiff's intestate, although not included within the meaning of the word "workmen" as used in the statute, was a person whose duty required her presence in the kitchen on the third floor; and we are unable to see why the statute prior to that amendment would not have been applicable to the numerous cases suggested as illustrative of the consequences that would follow from a literal construction of the statute.    Perhaps this very result may have been the reason why, in modifying the statute, the legislature left out these words.    At any rate, the omission is of such significance, as we have already said as to strengthen us in our belief as to the true construction of the statute as it exists at the present time, and as it did at the time of the death of the plaintiff's intestate.

We are therefore, of the opinion that the action is not maintainable, and that the verdict, as a matter of law, was clearly wrong.

*Motion sustained.*