IN RE FRANK R. McLAY.

Kennebec.    Opinion, November 8, 1934.

*Currier C. Holman,* for petitioner.
*Frank M. Libby,* for Public Utilities Commission.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

PATTANGALL, C. J., HUDSON, J. Dissenting.

THAXTER, J.    This case is before us on an exception to a ruling of the Public Utilities Commission, and involves the interpretation of Public Laws 1933, Chap. 259, Sec. 5, Par. C.

This statute became effective June 30, 1933, and provides for the regulation of the operation of motor trucks for hire on the highways of the state. Section 5 applies to so-called "contract carriers" which are designated as operators of motor vehicles, other than common carriers, transporting for hire freight or merchandise over regular routes within the state. Such business is declared to be affected with a public interest; and it is provided that no such carrier shall operate within the state without having obtained a permit therefor from the Public Utilities Commission. The conditions are prescribed under which such a permit shall be issued, and then follows a clause providing for the issuance of permits to certain of such carriers as a matter of right. It reads as follows:

"A permit shall be granted as a matter of right when it appears to the satisfaction of the commission, after hearing, · that the applicant has been regularly engaged in the business of a contract carrier as herein defined within this state, from the first day of March, 1932; and in such cases, operation may lawfully be continued pending the issuance of such permit, provided application therefor is made within 15 days from the effective date of this act."

The petitioner was a contract carrier entitled to a permit as a matter of right within the meaning of the above exception. On November 10, 1933, four months and ten days after the act became effective, he filed with the Public Utilities Commission an application for such a permit. The Commission dismissed his petition on the ground that his application should have been filed within fifteen days from the effective date of the act.

The petitioner contends that the legislature did not intend to impose a fifteen day limitation on the filing of applications for permits under this section, but was providing, pending a decision by the commission, for the operation of trucks without a permit by those contract carriers who should file their applications within the fifteen day period.

In the interpretation of a statute, the controlling consideration is the legislative intent, and that must ordinarily be found in the words which the legislature has used to define its purpose. If the phrasing is unambiguous, the court has no power to correct sup-

posed errors or to read into an enactment a meaning at variance with its express terms. *The Atlantic and St. Lawrence Railroad Company* v. *Cumberland County Commissioners*, 28 Me., 112, 120.; *Hersom's Case*, 39 Me., 476, 481; *State* v. *Howard*, 72 Me., 459, 464; *Pease* v. *Foulkes*, 128 Me., 293, 297, 147 A., 212.

At the same time, it is true that there is something more to a statute than its phraseology, and that the court is not bound because of mere words to construe an act so as to defeat its obvious intent. The plain spirit of a law governs rather than the words which are used to define its purpose and indicate its scope. Some flexibility is essential in the proper interpretation of statutes. *Holmes* v. *Inhabitants of Paris*, 75 Me., 559; *Carrigan* v. *Stillwell*, 99 Me., 434, 59 A., 683; *Craughwell* v. *Mousam River Trust Co.*, 113 Me., 531, 95 A., 221; *Sullivan* v. *Prudential Insurance Company of America*, 131 Me., 288, 160 A., 777. The necessity for such a rule is well stated in a recent case. "It rescues," said the court, "legislation from absurdity. It is the dictate of common sense. It is not judicial legislation; it is seeking and enforcing the true sense of the law notwithstanding its imperfection or generality of expression." *State* v. *Day*, 132 Me., 38, 41, 165 A., 163, 164.

The interpretation placed by the Public Utilities Commission on this statute seems to us not only contrary to its terms, but as unnecessary to rescue the act from absurdity or to enforce the true sense of the law. The phraseology is distorted to carry out a supposed intent of the legislature. The sentence in question provides for the granting of a permit as a matter of right, if the applicant has been regularly engaged in the business of a contract carrier from March 1, 1932. Then follows a rather necessary provision permitting a continuation of operation pending the issuance of the permit "provided application therefor is made within 15 days from the effective date of this act." If we approach the solution of this question without any preconceived idea as to what the legislature may or may not have intended, it seems perfectly clear from the language used that the legislature delegated to the Public Utilities Commission the duty of determining what carriers should be entitled to permits as of right, and then, pending the issuance of a permit, gave permission to operate without a permit to those carriers who should file their applications within the fifteen day period.

Such an interpretation of the statute is entirely reasonable. What is more, it is in exact accord with the wording.

To hold that the fifteen day period is a limitation on the time within which all contract carriers claiming to operate as of right must file their applications is to do violence to the language used. To find such a meaning it is necessary to transpose the clause in question from the end to the beginning of the sentence so that the act will read as follows: "Provided application is made within fifteen days from the effective date of this act, a permit shall be granted as a matter of right . . . ." With this change it would be perfectly clear that the limitation applied to the time within which all applications should be made. The ease with which the legislature could have made such a meaning clear militates strongly against the interpretation of the commission in this instance.

The duty of the court is to apply the language which the legislature has used, not to modify it. If the phrasing is unambiguous and does not carry out the legislative intent, it is for the law making body to correct the error.

*Exception sustained.*

## DISSENTING OPINION.

HUDSON, J. With exceeding regret do I find myself unable to concur in the majority opinion of the Court. On the contrary, I agree with the unanimous decision of the Public Utilities Commission.

Involved herein are the interpretation and construction of a portion of Par. C, Sec. 5, Chap. 259 of the Public Laws of 1933. Its language is stated in the majority opinion. About the facts there is no dispute. They appear in the opinion.

The Commission ruled adversely to the petitioner "in that he did not file his application within fifteen days from the effective date of said Act." Thus we have to determine whether or not a contract carrier, applying to the Commission for a permit as a matter of right and basing his claim on this statute, must file his application therefor within the said fifteen days. We deal particularly with the last clause in said Par. C, which reads: "provided application therefor is made within fifteen days from the effective date of this Act."

To what does this proviso apply? The Commission ruled that it applied to the application for a permit as a matter of right. The majority of this Court hold that it applies only to the continued operation pending the issuance of such permit.

That this clause, commencing with the words "provided application therefor," is relative and qualifying, there can be no doubt. Then to what does it relate and what does it qualify? The general rule is that "relative and qualifying words and phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent." Lewis' *Sutherland on Statutory Construction*, Sec. 420, p. 811. The last antecedent to the qualifying words, "provided application therefor," consists of the words "such permit" immediately preceding the word "provided." Those words, "such permit," however, have further reference and relationship, but to what? The only permit previously mentioned is the permit that may be granted as a matter of right. Consequently, the qualifying words of the clause relate back entirely over the intervening provision as to the operation pending the issuance to the permit to be granted as a matter of right. There can be no question that the words "such permit" and the words "a permit" refer to the same permit. That being so, the words "provided application therefor" must necessarily qualify and limit the right to obtain such a permit. The restriction, then, imposed by this qualifying clause is, in effect, that one entitled to receive the permit as a matter of right must make his application within the said fifteen days.

This interpretation not only does not violate the general rule above quoted, but entirely conforms with it, for, as already stated, we relate the qualifying words solely to the last antecedent.

Still another test to determine what this dependent clause qualifies is to consider the word "application" in it and to trace it back through the statute. We would discover if this word "application" as it there appears has reference to the application for the permit as a matter of right, or to any other application, particularly one on which to base a right of operation pending issuance. It is to be noted that no mention of the necessity of any application at all is made in the statute with reference to continuance of operation pending issuance. Antecedent to the qualifying words "provided application therefor," only one application is expressly provided for,

and we should not imply that there is any necessity for an application to be filed by one who would lawfully continue operation pending the issuance.

The word "application," then, in the three qualifying words above mentioned, must have reference to the only application thereinbefore mentioned, which has to do with the granting of the permit as a matter of right. Consequently, this word "application" appearing within the qualifying clause itself, and necessarily referring to the application for the permit as a matter of right, shows that that which is limited to the fifteen day period is that application. My construction of the statute, then, is that such an applicant must make his application within the fifteen days, and if he does, he has a legal right to continue to operate pending the issue of such permit without any action whatsoever by the Commission.

It need hardly be said that we are attempting to discover and declare the legislative intent underlying the enactment of this statute. "In the interpretation and construction of statutes the primary rule is to ascertain and give effect to the intention of the Legislature. As has frequently been stated in effect, the intention of the Legislature constitutes the law." 25 R. C. L., Sec. 216, p. 960.

> "Where the meaning of a statute or any statutory provision is not plain, a court is warranted in availing itself of all legitimate aids to ascertain the true intention; and among them are some extraneous facts. The object sought to be accomplished exercises a potent influence in determining the meaning of not only the principal but also the minor provisions of a statute. To ascertain it fully the court will be greatly assisted by knowing, and it is permitted to consider, the mischief intended to be removed or suppressed, or the necessity of any kind which induced the enactment." Lewis' *Sutherland on Statutory Construction*, Vol. II, Sec. 456, p. 864, and cases cited in footnote 25.

What was the intention of the Legislature? Fortunately the purposes of this legislation appear in Section 1 of the Act under the heading "Declaration of Policy." Therein it is disclosed that the need of this law was to remedy conditions already harmful to the public and in the interests of the public not longer to be tolerated.

The rapid increase of trucks is mentioned, as well as their ineffective regulation. Their use in creating dangers and hazards on public highways is emphasized as well as the purpose of creating a safer condition for the general public. The benefits to the highways themselves in less and better regulated traffic are indicated. Likewise, the relief of congestion is alluded to, and in this section we find a declaration of policy purposing a minimum of such trucks "adjusted and correlated so that highways may serve the best interest of the general public." It would seem, thus, clearly to appear that there was in the minds of the legislators a most urgent need of immediate regulation involving the licensing of a smaller number of operators, some of whom would be preferred applicants, having been so engaged as truck operators, and others unpreferred who would undertake the business anew. To effect such a result in the most natural way, as well as most equitably, considering the rights of applicants, it would be necessary upon the enactment of this legislation to determine forthwith who and how many should be accorded the right by the Commission to engage in this semi-private business on the public highways.

When you pause to consider the benefits desired of accomplishment by this legislation and "the mischief intended to be removed or suppressed," the urgency of the situation and the consequent necessity for the law, it is self-evident that quick action under it is imperative. A construction that would permit the filing of applications indefinite as to time, later than the fifteen days, even after months, or perhaps years, if within a reasonable length of time, would most seriously affect, if not entirely destroy, the accomplishment of the purposes and the policy of the law as set forth in Section 1. My associates hold, in effect, that the contract carrier, simply to obtain a right *to continue operation pending the issue of a permit* as a matter of law, must file his application within fifteen days from the effective date of the Act, but that to obtain the permit to operate as a matter of right for an indefinite length of time the application may be filed any time if within a reasonable length of time. I can not believe that the Legislature ever so intended. I can see no reason whatever for indefiniteness of time when applying for the right which is of the greater importance, viz: to operate indefinitely, and definiteness of time, the fifteen days, in which to

apply for the right to operate simply during the issue of the license a matter of so much less importance. Such construction leaves the Legislature in the position of having made a specific limitation in time as to that which is only incidental and no definite provision for the principal.

Furthermore, such a construction also makes possible this result. We have two classes of applicants, the preferred, that is, the carrier who has been operating since March 1, 1932, and who because of that fact is entitled to a permit as a matter of right; and the unpreferred, the new applicant. Suppose: B, C, D, and others, unpreferred applicants, present their applications within the fifteen days. To such of the latter as are necessary to perform the service, the Commission grants permits. Months later along comes A, a preferred applicant, claiming a permit as a matter of right when the field of service has become exhausted. He can not be denied, for he is entitled to the permit as a matter of right. The permits of the unpreferred already granted can not well, if at all, be recalled. Thus, the efficacy of the statute is impaired and there is at least a partial return to conditions as they existed before its enactment. Now it would seem that in order to accord justice to all applicants, the legislators would have considered that it was essential to fix a definite time in which preferred applicants could come before the Commission to claim their rights. The Commission should know as early as possible those who, having preferred rights, would claim them, so that it might determine whether there was any occasion for the issuance of permits to the non-preferred.

In the settlement of an estate, were there a certain sum for distribution between preferred and unpreferred claimants, how unnatural and unlikely it would be for the Legislature to pass a law providing a short definite time in which unpreferred claimants could present their claims and no time at all in which preferred claimants could file their claims. Such legislation would be most unwise and would lead only to needless delay and long continued uncertainty in the determination of the rights of the estate's creditors.

Furthermore, such a construction, while fixing definitely the fifteen days for application for right to operate pending the issue, not only leaves indefinite the time for application by the preferred

claimant, but imposes upon the Commission the burden of determining whether the preferred claimant is filing his application within a reasonable length of time. The reasonable length of time depends upon the particular facts pertaining to the claimant's case. What might be reasonable for Mr. A might be found to be unreasonable for Mr. B, though A's claim were presented subsequently to B's. I can not believe the Legislature intended to burden the Commission with the determination of such reasonableness of time by applicants.

The Commission's interpretation of this statute "rescues legislation from absurdity. It is the dictate of common sense." *State* v. *Day*, 132 Me., 38, 41, 165 A., 163, 164.

It is my judgment, then, that would we give efficacy to the intent of the Legislature in the enactment of this law, this Court should overrule the exception and sustain the decision of the Commission.

PATTANGALL, C. J., joins in this dissent.