**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the Governor on Aug. 14, 1973.

Answered Oct. 3, 1973.

ANSWERS OF THE JUSTICES

To the Honorable Kenneth M. Curtis, Governor of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justice of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on August 14, 1973.

An informal advance summary of our answers which will be hereinafter furnished in more extended and formalized fashion is the following:

(1) the Governor is required to appoint four members to the Land Use Regulation Commission;

(2) the Governor is required to appoint these persons subject to the restrictions specified in Chapter 569 rather than those specified in Chapter 460; and

(3) when the Governor appoints him, the Commissioner of the Department of Conservation will sit as a member and as Chairman of the Land Use Regulation Commission, as specified in Chapter 460.

The three questions propounded, partially interrelated in their formulation, are addressed to a single basic problem: the appropriate resolution of uncertainties and

conflict generated by the common impact of the provisions of two legislative enactments upon the Land Use Regulation Commission. It seems advisable, therefore, that we present a comprehensive unitary analysis explanatory of the rationale by which the answers to the individual questions have been been reached.

P.L.1973, Chapter 460 (hereinafter Chapter 460) and P.L.1973, Chapter 569 (hereinafter Chapter 569), enacted by the 106th Legislature, both became effective as law on October 3, 1973. In combination, they effect various changes in the Land Use Regulation Commission (hereinafter LURC).

It is clear that by Chapter 460, enacted not only as an incident of a general governmental reorganization but also to affect the specific impact upon conservation interests of the policies and activities of seven heretofore independent agencies, the 106th Legislature sought:

(a) to create a new Department of Conservation,

(b) to place the LURC within the new Department of Conservation,

(c) to give the Commissioner of the new Department of Conservation particular budgetary controls and administrative responsibilities relative to all of the agencies within the new Department of Conservation, and

(d) to make the Commissioner of the new Department of Conservation a permanent member and the Chairman of the LURC.

It is equally plain that by its other enactment, Chapter 569, the 106th Legislature undertook to modify the internalized structure of the LURC in particular respects not necessarily related to governmental reorganization.

Although these legislative concerns taken as generalized objectives involve no inherent incompatability, specific provisions of the two enactments under scrutiny have produced surface uncertainties and conflicts as follows.

First, Chapter 460 prescribes that the LURC shall consist of eight members (in contradistinction to the prior seven), to allow, as an incident of the creation of the new Department of Conservation and as Chapter 460 expressly provides, that the Commissioner of the Department of Conservation shall be both an additional permanent member of the LURC and its Chairman. Chapter 569, however, even though it was enacted later than Chapter 460, continues to refer to the LURC as composed of seven members and to identify the permanent members and the manner in which the Chairman is to be chosen as if Chapter 460 had never been enacted and 12 M.R.S.A. § 683 et seq. were still controlling law in all respects except as specially amended by Chapter 569.

Second, Chapter 460—having brought the LURC into the new Department of Conservation and effected changes in the total number of members of the LURC, the constituency of the permanent membership and the designation of the Chairman of the Commission—in all other respects continues to refer to the LURC by use of the terminology specified in 12 M.R.S.A. § 683 et seq., and omits to acknowledge the special alterations produced by Chapter 569 in the appointed membership of the LURC insofar as Chapter 569:

(1) changes the representational status of two of the appointed members such that

(a) one appointed member is made representative of the public, generally, instead of, as previously, representative of general landowners, and

(b) another appointed member is designated as representative of the interests of "industry", generally, rather than, as before, representational of "industry" conceived to be more particularly tied to "forestry"; and

(2) introduces a new staggering of the expiration of the appointive terms, notwithstanding that all of the appointed members of the LURC are now serving full four-year terms, and as if the appointments to the LURC were to be made for the first time.

■ When the Legislature has produced two enactments which yield some apparent uncertainties and inconsistencies, as above described, the basic premise must be that the Legislature was intending to accomplish something. It could not reasonably have been the true purpose of the Legislature, in passing two enactments, to end up by establishing no law whatever. It thus devolves, appropriately and necessarily, upon the judicial branch of government to seek a common core of legislative goals by which, with rationality, as many as possible of the seemingly incompatible exressions of legislative will may be brought into an harmonious body of substantive law. In re McLay, 133 Me. 175, 175 A. 348 (1934); State v. Day, 132 Me. 38, 165 A. 163 (1933); Lovegrove v. Hunt, 58 Me. 9 (1870).

■ It is in this sense that the judiciary undertakes a "construction" of the legislative intent. It seeks to perceive in both of the legislative enactments a comprehensive legislative design objectively manifested and consistent with both enactments. If such foundational legislative scheme can be reasonably discerned, any subsidiary and utterly irreconcilable inconsistencies are then to be dealt with in a manner which tends to promote the underlying legislative purposes to which both enactments have germane relationship. Beckett v. Roderick, Me., 251 A.2d 427 (1969); Cram v. Inhabitants of County of Cumberland, 148 Me. 515, 96 A.2d 839 (1953).

Inductively crystallized from the totality of the judicial experience with the workings of the above-mentioned process are various general rules, the so-called princi-ples of "statutory construction." Certain of them have special applicability to the present circumstances.

■ Cardinal among them is the rule that if two legislative enactments relate to the same subject-matter and come from the same legislative session, neither enactment is to be regarded as effecting a total repeal of the other; rather, as many of the provisions of each enactment will be given full effectiveness as are consistent with a single harmonious whole which may be reasonably perceived as the overall legislative purpose. Cram v. Inhabitants of County of Cumberland, supra; Beckett v. Roderick, supra. Thereafter, any specific provision to which full effectiveness cannot be assigned because of unavoidable inconsistency becomes subject to additional principles of statutory construction requiring that the provisions of one enactment must give way to those of the other as "impliedly repealed." Howard v. Bangor and Aroostook Railroad Co., 86 Me. 387, 29 A. 1101 (1894); Cram v. Inhabitants of County of Cumberland, supra.

■■ Relative to this doctrine of partial "implied repealer", two subsidiary rules are here relevant. First, to the extent that the two enactments cover the same subject-matter, those facets of either statute which treat the common subject-matter in the more direct, special and minute manner will usually be held to prevail. Lovegrove v. Hunt, supra; Beckett v. Roderick, supra; Larson v. New England Tel. & Tel. Co., 141 Me. 326, 44 A.2d 1 (1945). Second, the provisions of the later enactment which are consistent with the foundational legislative purposes will generally control unless a contrary result is plainly required. Howard v. Bangor and Aroostook Railroad Co., supra; Lyon v. Ogden, 85 Me. 374, 27 A. 258 (1893).

In the application of the foregoing primary, and subsidiary, principles of statutory "construction" we find little difficulty in discerning in the instant two legislative

enactments an underlying harmonious common core of legislative design.

First, the 106th Legislature plainly wanted the LURC to function, generally, within the scope of a general governmental reorganization and, more particularly, to reflect policy considerations appropriately deemed to be incident to that reorganization—specifically, that the LURC membership be increased to eight members thereby to achieve the objective that the Commissioner of the new Department of Conservation become an additional permanent member of the LURC as well as its Chairman. Second, the 106th Legislature desired special changes in the representational status of two of the appointed members of the LURC, and in thus altering the representation of fifty percent of the appointed membership, the 106th Legislature deemed it necessary that there be a renewed staggering of the expiration of the terms of the appointed membership.

With these fundamental aims attributable as the objective manifestations of legislative intent it becomes possible rationally to reconstruct the particular legislative processes by which the aims were to be achieved.

The 106th Legislature enacted Chapter 460 to accomplish its general reorganizational objectives. In this project in Chapter 460 the Legislature concerned itself specifically with the LURC solely to the extent of placing it within the new Department of Conservation, and as a further consequence of this change, of concentrating upon its permanent membership constituency and its Chairmanship.

Later, in enacting Chapter 569, the 106th Legislature undertook to accomplish its objective of modifying the representational aspects of the appointed membership of the LURC. For this purpose, it undertook to deal directly, affirmatively and specifically with this narrow aspect of the internal composition of the LURC.

■ It may be true that in its second enactment the Legislature omitted to mention explicitly the new Department of Conservation and seemed to have ignored the major consequences of the reorganization already effectuated by Chapter 460, insofar as in Chapter 569 the Legislature used some terminology which had been rendered inappropriate by the enactment of Chapter 460. No reasonable person, however, could fairly conclude from such silence and inappropriate terminology that the 106th Legislature had either truly forgotten what it had done only three weeks earlier, or was really intending by the enactment of Chapter 569 to repeal the legal effectiveness of the important governmental reorganization effectuated three weeks earlier. Silence and a seeming reversion to some of the terminology utilized in 12 M.R.S.A. § 683 et seq., as that statute read before it was amended by Chapter 460, are too poor a tool to be deemed the calculated instrumentality by which the 106th Legislature in Chapter 569 was undertaking a purposeful repeal of the specific changes, deriving from governmental reorganization policies and specific conservation considerations, produced by Chapter 460. The more reasonable interpretation is that these inappropriate references in Chapter 569 resulted from draftsmanship inadvertencies and that Chapter 569 was intended to operate within the framework of the amendments effected by Chapter 460—i. e., an increase in the membership of the LURC to eight, with the Commissioner of the Department of Conservation a new permanent member as well as the Chairman of the LURC.

Furthermore, insofar as Chapter 569 concentrates uniquely upon the appointed membership of the LURC and the interests to be represented by the appointed members (whereas Chapter 460 focuses its attention primarily upon the permanent membership), it is a sound, rational and fair construction of the objectively manifested legislative intention that Chapter 569 is truly concerned only with the bal-

ance which shall exist among the appointed members of the LURC, and the interests represented by them, rather than the balance of the LURC as an entirety. In Chapter 569 the heads of Forestry, Parks and Recreation and the State Planning Office are retained as permanent members of the LURC, as previously under 12 M.R.S.A. § 683 et seq., and as they had likewise been continued as permanent members by the 106th Legislature's enactment of Chapter 460. In addition, since the 106th Legislature cannot reasonably be taken in enacting Chapter 569 to have forgotten, or to have intended to repeal, the changes wrought by the enactment of Chapter 460, its silence and inappropriate use of terminology in Chapter 569, in relation to the changes in the permanent membership of the LURC effected by Chapter 460, fairly regarded as draftsmanship inadvertencies, corroborate the conclusion that the 106th Legislature considered the modifications in the permanent membership of the LURC already effected by Chapter 460 to be immaterial to the changes in the representational aspects of the appointed membership of the LURC being made in Chapter 569.

■ Thus, as to the number of members constituting the LURC, the designation of a new permanent member of the LURC, and its Chairmanship, Chapter 460 is to be taken as controlling. In accordance with the subsidiary principles of statutory construction · previously delineated, Chapter 460 deals with this subject-matter directly, affirmatively and specifically; and apparent discrepancy becomes resolved when the incidental references in Chapter 569 to the number of the Commission and the titles of the permanent members are looked upon as loose draftsmanship.

As to all other facets of modification in the appointed membership of the LURC and in the interests which are to be represented by the appointed membership, Chapter 569 is to be regarded as controlling. As to these, Chapter 569 treats this subject-matter affirmatively, directly and with

explicit specificity; and the impact of Chapter 569 in these respects becomes controlling, a fortiori, insofar as Chapter 569 is also the later enactment.

■ On the basis of the foregoing generalized analysis we proceed to answer each of the individual questions propounded.

QUESTION NO. 1: Is the Governor required to appoint four members to the Commission on or after October 3, 1973?

ANSWER: We answer in the affirmative.

This answer is necessitated by the explicit provisions by which Chapter 569, in addition to reconstituting fifty percent of the appointed membership of the LURC, explicitly concerns itself with the staggering of appointments in the following language:

"One of the initial appointees to the commission representing the public shall be appointed for a one-year period; the initial appointee representing conservation interests shall be appointed for a 2-year period; the initial appointee representing the industry interests shall be appointed for a 3-year period; and the 2nd initial appointee representing the public shall be appointed for a 4-year period. Thereafter said appointees shall be appointed to serve 4-year terms."

The obvious, and only reasonable, inference to be drawn from such statutory language is that the 106th Legislature intended that the four appointed members of the LURC, precisely because their representative statuses had been reformulated as of October 3, 1973, should serve new staggered terms of four years. Unless all four members of the Commission are appointed during the first year after the effective date of Chapter 569, this result cannot eventuate. Hence, it becomes necessary that the Governor appoint four new members to the Commission.

QUESTION NO. 2: If the answer to the preceding question is in the affirmative, is the Governor required to appoint persons subject to the restrictions specified in Chapter 460 or the restrictions specified in Chapter 569?

ANSWER: We answer that the Governor is required to appoint persons subject to the restrictions specified in Chapter 569.

QUESTION NO. 3: Will the Commissioner of the Department of Conservation, when the Governor appoints him, sit as a member and as Chairman of the Commission as specified in Chapter 460?

ANSWER: We answer in the affirmative.

Dated at Portland, Maine, this third day of October, 1973.

Respectfully submitted,

ARMAND A. DUFRESNE, Jr.
Chief Justice

RANDOLPH A. WEATHERBEE

CHARLES A. POMEROY

SIDNEY W. WERNICK

JAMES P. ARCHIBALD

THOMAS E. DELAHANTY
Justices.