STATE OF MAINE *vs.* GEORGE HOWARD.

Penobscot. Opinion July 30, 1881.

*Indictment. Special stat. 1868, c. 448. Shingle sawdust.*

Special stat. 1868, c. 448, prohibits the throwing of shingle sawdust, or long sawdust, and shingle shavings, or jointer shavings, into Penobscot river; such sawdust and shavings being embraced in the general description of "refuse wood or timber of any sort" prohibited by such statute.

ON REPORT.

Indictment under special stat. 1868, c. 448.
The opinion states the case.

*B. H. Mace*, county attorney, for the State, cited: *Winslow*
v. *Kimball*, 25 Maine, 495 ; *Hart* v. *Cleis*, 8 John. 41 ; *United
States* v. *Coombs*, 12 Peters, 80 ; *McCluskey* v. *Cromwell*, 1
Kernan, 602 ; *The Watervliet Turnpike Co.* v. *McKean*, 6 Hill,
620 ; *Pillow* v. *Bushnell*, 5 Barb. 156, 159 ; *Gibson* v. *Jenney*,
15 Mass. 206 ; *Gore* v. *Brazier*, 3 Mass. 539 ; *Putnam* v.
*Longley*, 11 Pick. 490 ; *Pitman* v. *Flint*, 10 Pick. 506 ; Opinion
of the Justices, 22 Pick. 573 ; *Jackson* v. *Lewis*, 17 John. 477 ;
*People* v. *N. Y. Central R. R. Co.* 3 Kernan, 78 ; 5 Abbott
Digest, 79, § 31 ; *King* v. *The Company of Prop. of M. & S. W.
W.* 630 ; 8 E. C. L. 168 ; *Casher* v. *Holmes*, Clerk, 2 Barn.
& Adol. 592 ; 22 E. C. L. 146 ; 79 E. C. L. 511 ; *Jones* v.
*Jones*, 18 Maine, 313 ; *Ogden* v. *Strong*, 2 Paine, 587 ; *Hol-
brook* v. *Holbrook*, 1 Pick. 250 ; *Mendon* v. *County of
Worcester*, 10 Pick. 243 ; 5 Abbott's Digest, 80 ; Heard's
Criminal Law, 66, 67, 68, 69 ; *United States* v. *Reed*, 1
Lowell, 233 ; *United States* v. *Pond*, 2 Curtis, C. C. 268.

*C. A. Bailey*, (*D. F. Davis* with him,) for the defendant.

Prior to the year 1868, the throwing into the river of all kinds
of waste substances, from mills employed in the manufacture of
lumber on Penobscot river, had been the custom from the earliest
establishment of such mills ; and, indeed, such was the original
custom everywhere from the first settlement of the country.   In
some of the States this custom, not unreasonably exercised, had
been declared to be a legal right.   *Palmer* v. *Mulligan*, 3
Caines, 307 ; *Snow* v. *Parsons*, 28 Vt. 459 ; *Jacobs* v. *Allard*,
42 Vt. 303.

But the court in this State, while not denying the right, had,
however, limited it so far as to make parties exercising it, assume
the risk of obstructing a common highway or of injuring lower
riparian proprietors.   *Veazie* v. *Dwinel*, 50 Maine, 490 ; *Wash-
burn* v. *Gilman*, 64 Maine, 163.

In 1859 this right received legislative recognition in "An act
to define the liability of mill owners," public laws c. 98, a
proviso to which declares : "But nothing herein contained shall
be construed to create any restriction upon the present rights of

operators of mills, to float their waste matter from their mills upon any river or stream."

In 1868 "An act to prevent the throwing of slabs and other refuse into the Penobscot river" was passed, under which these actions are prosecuted.

By this statute, that which had hitherto been lawful, was made an offence punishable by indictment.

Of such offences Bouvier says, their "criminality consists not in the simple perpetration of the act  .   .   .   but in its being a violation of a positive law." Law Dict. Crime.

With this explicit declaration of what the offence consists we come to inquire wherein the respondents have violated any "positive law."

In the manufacture of shingles there is of necessity much waste. That waste most obstructive to navigation is the bark, slabs and refuse timber taken from the bolts. The statute clearly prohibits the thowing of these into the river. The two other necessary waste products from the process of making shingles are the sawdust and jointer shavings.

In the enumeration of the various classes of waste, prohibited by the statute, "sawdust" and "shavings" are not to be found. The words "wood" and "timber," have a well established and popular significance, as representing specific subjects. They designate commodities of commercial value and importance, the sale and admeasurement of which are regulated by law. Nobody, however wild his imagination, could conceive that "wood" and "timber" designate "sawdust" and "shavings." Nor can their representative character be changed by the qualitative word "refuse."

"Words and phrases are to be construed according to the common meaning of the language." R. S., c. 1, § 4.

The difficulty with the case, as presented by the government, lies in the failure to discriminate between "refuse wood" and wooden refuse. If the statute had prohibited the latter, there might have been less room to question the position taken. As it is, however, it would be a gross violation of all principles for the

construction of penal statutes to hold the respondents.   Bishop
on Statutory Crimes, § §, 190, 193, 194, 220; *Cleaveland* v.
*Norton*, 6 Cush. 383; *United States* v. *Wiltberger*, 5 Wheat. 76.

It will be observed by the petition (in the case) which was the
inducing cause of the legislation upon the subject, that if the
prayer of the petitioners had been fully granted, "sawdust and
other materials which shall fill up, or obstruct, or have a tendency
to fill up said river, or obstruct the navigation thereof," would
have been within the statute, and the act, with which the
respondents are charged, would have been expressly prohibited.
In the face of this conspicuous denial of that part of the petition,
it is too much to believe, that the omission was not intentional.

The history of legislation in this State, upon the subject of
throwing waste into streams, shows that no lack of proper words
to express what was proposed, has ever been manifested.

It is believed that the initiatory step in this direction is c. 30,
special laws, 1840, for Machias river; the enumeration there
being "slabs, lathings, edgings or any other refuse timber of any
nature whatsoever or other materials, whereby the navigation of
said river may be impeded or injuriously affected."

This was followed by special laws, c. 230, 1854, Narraguagus
river, the enumeration there being, "slabs, lath or board
edgings, or refuse timber of any sort, or other materials whereby
the navigation," &c.

And the Penobscot act of 1868 was next; in which the words,
"or other materials," as we have seen, are noticeably omitted.

But to show more particularly that the legislature has never
failed to use apt words when intending that shingle sawdust and
jointer shavings should be brought expressly within the inhibition
of a statute, attention is called to the Piscataquis act, special
laws 1878, c. 94, wherein the very substances proscribed by the
Penobscot act, are not only enumerated, *ipsissimis verbis*, but
added thereto are the following: "or any shavings or fibrous
material created by the manufacture of shingles."

Also the Kenebec act, c. 80, special laws of 1878, which inter-
dicts throwing into the river "slabs, edgings, or any shavings or
fibrous material created by the manufacturing of shingles, . . .
whereby the navigation of said river may become impeded," &c.

*A. W. Paine*, for the defendant, also furnished an able brief.

LIBBEY, J. This is an indictment under special act of 1868, c. 448, and comes before this court on report. The first section of the act is as follows : "No person or persons shall cast or throw into the Penobscot river, below the mouth of the Mattawamkeag river, or into any of its tributaries entering below the mouth of said Mattawamkeag river, any slabs, board or lath edgings, bark, grindings of edgings, wood, bark or lumber, or refuse wood or timber of any sort, or shall place, pile or deposit on the banks of said Penobscot river, or banks of said tributaries, any slabs, board or lath edgings, bark, grindings of edgings, bark, wood or lumber, or refuse wood or timber of any sort, in such negligent or careless manner that the same shall fall or be washed into said river or said tributaries, or with the intent that the same shall fall or be washed into said river or said tributaries, whereby the navigation of said river may become impeded or injuriously affected, or which shall tend to impede or injuriously affect the navigation of, or fill up said river, under a penalty," &c.

It is admitted that "during the time alleged in the indictment, the respondent was the lessee in possession of a shingle machine, and in operating and running the same, threw into the Penobscot river large quantities of waste produced in the sawing and manufacture of shingles ; the waste being of two kinds or descriptions. First, that made by the saw in sawing the shingle bolt into shingles. Second, that made by the machinery in edging and trimming the shingles after the shingle saw has gone through the bolt. The latter is done by the edger or jointer."

The first substance named is commonly called among mill men "shingle saw dust" or "long saw dust" and consists of long fibres of the wood cut out by the saw, of the length, or nearly of the length of the shingle bolt. The second is called "shingle shavings" or "jointer shavings," and consists of the portions of the shingle taken off by the machine in edging and trimming it and is of the length, or nearly of the length of the shingle. Specimens of each were exhibited at the argument that the court might get a better idea of the materials involved than by a description merely.

"It is admitted that either of the sorts of debris named, thrown into the river, has a tendency to fill the river so as to impede or injuriously affect the navigation thereof."

The question to be determined is whether the materials named or either of them, are within the inhibitions of the act.

Neither is described in the act by the name by which it is known among mill men; but it is claimed by the attorney for the State that both are embraced under the general description in the act of "refuse wood or timber of any sort."

On the other hand the counsel for the defendant maintain that, if the legislature intended to include these materials among those prohibited, they would have been named in the act by their well recognized names. That the words "wood" and "timber" have a well established and popular meaning, as representing specific subjects, designating· commodities of commercial value and importance, the sale and admeasurment of which are regulated by law; "and that *refuse wood* and *refuse timber* are the opposites in quality of merchantable wood and merchantable timber."

In construing a statute the great purpose to be sought is to ascertain the intention of the legislature. That intention must be ascertained from the language used; for, if the legislature had in view a certain purpose to be accomplished, but failed to use language which, giving to it any recognized meaning, fails to express such purpose, the court cannot supply it.

When, however, words used in a statute have more than one well defined and recognized meaning, in ascertaining the sense in which they are used by the legislature, recourse should be had to the subject matter to which they relate, and the object sought to be accomplished; and if the title of the act tends to explain the sense in which the words are used that may be resorted to.

The word "wood" has several well defined and recognized meanings. Among them, as given by Worcester, are "1, A large and thick collection of trees; a forest." "2, *The substance of trees;* trees sawed or cut for architectural or other purposes; timber." "3, Trees cut or sawed for fuel." In what sense is the word used in the act under consideration.

The subject matter to which the act relates is the business of manufacturing logs, as cut in the forest and floated to the mills,

into various kinds of lumber; and the manner in which, at the time of the passage of the act, at the mills, on the Penobscot river, the manufacturer was accustomed to get rid of the refuse or waste, or such portions of the log as were not utilized for any purpose and were valueless, by casting them into the river to be floated away from the mill. It was found that this practice was fast filling up the channel of the river and greatly impeding its navigation; and the object sought to be accomplished by the act was to prevent it.

Having in view the subject matter to which the act relates and the object to be accomplished by it, it cannot be supposed that the word *wood* was used in its commercial sense, as designating "trees cut or sawed for fuel," as the materials which it was intended to designate were not subjects of commerce, but such as were cast off as waste or refuse, of no value. We think it was used in its generic sense as designating "the substance of trees," or of the logs to be manufactured.

But it is contended in argument, that the use of the adjective, "refuse," to qualify and limit the word "wood," is inconsistent with this interpretation; that *refuse*, used to qualify and limit *wood* or *timber*, means unmerchantable, of inferior quality, and is not an apt or appropriate word to describe such portions of the substance of the log as are cast off in its manufacture; but that, for that purpose the apt and appropriate word is *waste*.

The answer to this argument is that standard lexicographers use "refuse" as synonymous with "waste." Thus, Worcester: "Refuse, *a*—left as worthless when the rest is taken; worthless; *waste*;" and one of the meanings given by him of *waste* is *refuse.* Moreover, the title of the act is: "an act to prevent the throwing of slabs and *other refuse* into the Penobscot river." Here it is obvious that "slabs, board or lath edgings, bark, grindings of edgings, wood, bark or lumber" named in the act, which it is claimed are properly called *waste*, are all designated by the word *refuse.*

Then the word "sort" has some significance in pointing the meaning of the other words. It does not appear to be used in

reference to the different *kinds* of wood, but rather in reference to the *form* or *shape* of the refuse wood or timber.

The great purpose sought to be accomplished by the act was to prevent obstructions to the navigation of the river by throwing into it the waste or refuse made in the manufacture of logs into the various kinds of lumber; and that this purpose might not be defeated, the legislature, after naming several articles of refuse or waste, added the general description of "refuse wood or timber of any sort."

Both of the materials involved in this indictment are a part of the substance of the log; they are refuse or waste; and when thrown into the river tend to obstruct and impede its navigation; and we are of opinion that they are embraced in the general description in the act, and that throwing them into the river is inhibited by it.

In accordance with the stipulation in the report,

> *A plea of nolo contendere must be entered.*

APPLETON, C. J., BARROWS, VIRGIN, PETERS and SYMONDS, JJ., concurred.