PEJEPSCOT PAPER COMPANY

*vs.*

TOWN OF LISBON.

Androscoggin.   Opinion May 14, 1928.

*Robinson & Richardson,* for plaintiff.
*Frank A. Morey,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, BASSETT, PATTANGALL, JJ.

BARNES, J., concurring in the result.

DUNN, J. In this case the plaintiff, the proprietor of a pulp and paper manufacturing plant, brought its action for money had and received against the town of Lisbon, where the plant is, to recover overpayments claimed to have been made for water in the years 1920-1926.

Before furnishing the water the plaintiff town, which in effect had been made a water district (P. & S. L., 1903, chap. 241), had filed its schedule of rates with the Public Utilities Commission (R. S., Chap. 55, Sec. 25).

The schedule makes several classifications. One is for dwellings, boarding and lodging houses, stores, shops, offices, * * * * "and all domestic purposes" at twenty-five cents a hundred cubic feet, with a seven-dollar-a-day minimum charge. Next are rates for hotels, and for laundries. Then comes the fourth classification. It sets an industrial rate thus:

"A $4.00 per day minimum charge for 4000 cubic feet or any part thereof. All excess of the 4000 cubic feet per day shall be at the same rate of 10 cents per 100 cubic feet, the same to be reckoned at the end of each quarter, beginning Jan. 1. Providing however the water supply be in sufficient quantity for this purpose, and that it shall not be detrimental to domestic uses,

and which provision shall be at the judgment and discretion of the town through its Board of Water Commissioners."

The water which had been supplied to the office and rest-rooms in the plant for drinking, washing and toilet had been measured through the meter provided by the town for that purpose and billed periodically as a single item under the "office" and "all-domestic-purposes" classification of the schedule of rates. All the other water was billed as "industrial."

Compulsion, fraud, or extortion, of the species at times applied to public utility exactions, there was none. On the one hand was honesty of purpose in claiming that which was believed to be justly due; on the other, the payment of charges based on schedule rates of which, until April, 1924, the customer had only that knowledge imputed by the law from the fact that the schedule had been filed. In April, 1924, the town commissioners gave an official of the plaintiff company, who had inquired about the "average" of the rates, a copy of the schedule. After having the schedule, plaintiff continued for several years to pay the bills when and as presented, but eventually, on concluding that it had overpaid for water, plaintiff brought this action.

On the trial no material conflict developed concerning cubic feet consumption of water or the amounts charged and paid therefor. The controverted issue was the interpretation as a matter of law of the schedule of rates.

Plaintiff contended that the industrial rate, restricted to days on which the plant was operated, Sundays and holidays being excluded, if as a fact manufacturing operations at the plant were suspended on those days, should apply as the only standard by which to make the charges for all the water.

There was tacit assent that, if the plaintiff were correct in contention, excessive payments aggregated $2,653.21.

Defendant contended that the water, although one pipe had brought it into the plant, became in the plant, in consequence of its appropriation through different pipes to different uses, chargeable accordingly. Hence the contention of the defendant that the office or domestic rate should apply to the water which had been so supplied, and the industrial rate, with minimum for natural or calendar days, to the other.

The jury was instructed that "day" as used in the schedule meant a calendar day on which water, much or little, was used from the public utility.

Verdict was for the defendant.

Motion for a new trial, on the ground that the verdict is violative both of law and evidence, has been argued by the plaintiff's counsel. And its counsel has argued exceptions to rulings and instructions by the presiding Justice, and to refusals to rule and instruct. No exception goes to the exclusion of evidence.

The "office" rate, which is fixed at the same amount as the "domestic-uses" rate, plainly applies to office water. The word "office" must be given an exclusive sense or it has no operation at all. If there were no specific office rate — if "domestic" alone were the term of the schedule — such term might well apply to the office drinking water and to that water supplied for the office lavatories and water-closets.

The term "domestic" in its application to water furnished by a public utility has been enlarging as consideration for the convenience and well-being of man has increased. *Kimball* v. *North East Harbor Water Company*, 107 Maine, 467. While primarily "domestic" relates to home life, to household or family, yet it has a broader significance which must be determined with reference to the relation in which it appears.

The schedule of rates involved in this controversy contemplates the using of water for health, comfort, and sanitary conveniences in buildings other than dwellings — "all domestic purposes" following the schedule enumeration of dwelling and other houses.

The fact that the building to which water is supplied is used for industrial purposes is not the criterion by which to determine whether the water supplied is used for domestic purposes. The test is an intended use which in its nature is domestic.

"What is the character of the purpose, not what is the character of the place of user." *Metropolitan Water Board* v. *Avery*, (1914) A.C. 118, Ann.Cas. 1914D, 556.

"If the water is used for a purpose which is common to all domestic establishments it is none the less used for domestic purposes because it is ancillary to a trade, manufacture, or business." *Metropolitan Water Board* v. *Avery*, supra.

Water supplied to a factory for the mere personal convenience of men employed in the factory is supplied for domestic purposes, and not for any trade purpose at all. *Colley's Patents* v. *Metropolitan Water Board*, (1912) A.C. 24, Ann. Cas. 1912B, 617.

The water furnished by the plaintiff to the defendant's restrooms, for the personal convenience of the employees of the plant, was for uses domestic in nature.

One matter more. This point was saved on exception. The exception, though not argued, has not been waived; the brief so states. The point may be considered here as congruously as later. Ought the jury to have been instructed that "day" in the schedule meant a day on which the plant was operated, and that kind of a "day" only? In order to determine the question the connection in which "day" is used must be borne in mind. The schedule is not defining the day on which an industrial plant may be operated, nor limiting the use of water to operating-days, though it may limit the minimum rate to days on which water is used.

The schedule fixes water rates. Water rates are water rents. In the computation of rents in which the day as a fixed period of time is the standard of measurement, every intervening day — secular days, Sundays, holidays, all — must be included and counted in the reckoning. *Pressed S. C. Co.* v. *Eastern R. Co.*, 121 Fed., 609.

The ruling of the trial court, that the schedule "day" meant a calendar day on which there had been user of the public utility water, while adverse to the plaintiff certainly left the plaintiff without room for exception.

Turning back more directly to the motion for a new trial. On finding that there had been no compulsion, actual, present, potential, in inducing the payments, the jury, under an instruction applicable to the general doctrine of waiver, found that the plaintiff in paying more than it owed for water had voluntarily renounced or waived the lower rate to which it was entitled. In the particular case this instruction may or not have been appropriate. The jury verdict, however, not only is not obviously against law and evidence but chords with law and evidence.

And now, the point of this exception having been so considered, what of the remaining exceptions?

The ruling of the inclusiveness of the industrial rate moulded and shaped the course of the trial to the question of whether the payments had been "voluntary" or "involuntary"; the Justice ruling and instructing that the payment of money, where there is no mistake of fact, though under the mistaken belief that the payer was bound to pay it, is voluntary and cannot be revoked.

First in this way, and again in that, to compress the residuum of the case into a compact presentation, the exceptions aimed to demonstrate ultimately that, in a legal sense, the payments, or some of them at least, had not been "voluntary."

From the premises from which certain exceptions were saved, these exceptions may have had merit, but the industrial rate was not inclusive of all the water supplied and the verdict, as before stated, is not manifestly wrong.

No exception, as above noticed, goes to the exclusion of evidence. It therefore must be presumed that were there to be another trial the facts would to all intents and purposes be the same as now.

In this situation it remains but to say that exceptions will not be sustained when the excepting party must fail in the end upon what are equivalent to undisputed facts. *Orr* v. *Old Town*, 99 Maine, 190; *Stachowitz* v. *Barron Anderson Company*, 121 Maine, 534.

> *Motion overruled.*
> *Exceptions overruled.*