ANDREW J. BECK, BANK COMMISSIONER
*vs.*
CORINNNA TRUST CO.

Penobscot.    Opinion, March 23, 1943.

*Frank I. Cowan,* Attorney General,

*Eaton & Peabody,* for the Bank Commissioner.

*Edgar M. Simpson,* for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, CHAP-MAN, JJ.

THAXTER, J.   This bill in equity brought by the bank commissioner alleges that the defendant is insolvent and asks that

it be enjoined from the further prosecution of its business and that its affairs be wound up and its assets distributed. Subsequently, and after the filing of an answer by the defendant, a petition was filed praying for the appointment of a receiver. After a hearing, the sitting justice entered a decree dismissing the bill and the case is now before us on an appeal by the plaintiff from such ruling.

The defendant was organized in 1919 under the general law to do a trust and banking business. On January 13, 1930, in accordance with the terms of an agreement with the Merrill Trust Company, another banking institution, the defendant ceased to carry on its businesss. This agreement consummated negotiations which had been in progress between the two banks, the terms of which were embodied in a letter from the Merrill Trust Company to the defendant of the following tenor:

"MERRILL TRUST COMPANY

Capital $1,000,000        Surplus $800,000

BANGOR, MAINE

January 9, 1930

The Corinna Trust Company,
Corinna, Maine.

Dear Sirs:

As the result of negotiations with your Directors we hereby make the following offer and proposition:

The Merrill Trust Company will assume and pay all your obligations to depositors or others. In this connection your depositors at their option will upon request receive cash for their deposits, or they may transfer the same to this bank or any of its branches. You are forthwith to cease to accept deposits or loan money.

In consideration of this assumption of your obligations, you will transfer to us cash and your deposits in your office or other banks. Any difference and deficit between the total of the obligations by us assumed and the cash and

deposits above referred to, will be your unconditional obligation to us, and will be represented by your promissory note to us due on or before one year from date and bearing interest at $5\frac{1}{2}\%$ per annum, payable quarterly.

You will proceed to collect as they mature, notes, loans and obligations due you. Monthly or quarterly you will pay to us for application on said note the proceeds of your collections.

The obvious effect of this transaction is to substitute one creditor in lieu of many; and to give you ample time to collect obligations due you and to liquidate your affairs to satisfy your obligation to that one creditor.

If your stockholders vote in favor of this transaction, your letter of acceptance will constitute a contract between our institutions.

Respectfully yours,

MERRILL TRUST COMPANY
HENRY W. CUSHMAN, President"

The offer of the Merrill Trust Company was duly accepted by the stockholders of the defendant at a special meeting held January 13, 1930 and the same day the defendant transferred to the Merrill Trust Company all its cash on hand and on deposit in other banks amounting to a total of $13,064.30, in consideration of the obligation of the Merrill Trust to assume and satisfy all obligations of the defendant to its depositors. The defendant then gave to the Merrill Trust a note for the balance of the obligation assumed, which, since January 13, 1930 in accordance with the terms of the agreement, has been paid in part by the liquidation of assets of the defendant. The bill in equity was filed June 2, 1941 and on January 13, 1942, about a month prior to the hearing on the bill, the balance due on the note including interest amounted to $36,596.84. The assets remaining as security for this note were appraised at $3,175.34. At all events it is conceded, and in fact the answer tacitly admits, that at the time of filing the bill the defendant was in-

solvent and there is no doubt that this situation still exists. Except for the purpose of liquidating its assets for the benefit of the Merrill Trust Company, the defendant has not conducted any business since January 13, 1930. Its only indebtedness is represented by the balance due on the note. The depositors have been paid in full.

Under these circumstances, did the presiding justice have the right to dismiss this bill?

As we read the record it is apparent to us that counsel for the plaintiff consider the connection of the Merrill Trust Company with the transaction as immaterial to the decision of this case. Whether this point of view is due to the fact that the Merrill Trust Company is not a party to these proceedings or to the construction which counsel place on the statute here involved is not altogether clear. It is true that the trust company is not a party and no decree entered here is binding on it, but, nevertheless, the arrangement which was made between the two banks is a matter of consequence in determining whether the relief prayed for by this plaintiff should be granted. Whether the Merrill Trust Company is a creditor is important, for counsel must concede that, if it is not a creditor, there would be no basis for the bill. And that it is the only creditor may likewise be relevant. The court cannot be asked to consider the facts in this record as if they had no relation to each other or to forgo drawing from them reasonable and logical deductions. They must be viewed as a whole. So interpreted it is apparent that there was an arrangement entered into between these two banks for the voluntary liquidation of the defendant. The Merrill Trust Company assumed the obligation to pay the depositors of the defendant and presumably received certain benefits. That they were not all that was anticipated is beside the point. For a period of more than ten years prior to the time of filing this bill it was the defendant's only creditor and was not powerless to control the policy of those charged with the task of disposing of its assets. It negotiated and participated in a method, often followed in similar

cases, for the quiet and orderly liquidation of this bank utterly inconsistent with the proceeding now brought by the bank commissioner, who we cannot believe is acting contrary to the wishes of the only creditor involved. The decision as to whether, at the time the bank was closed, it was wiser to dispose immediately of all the assets involved or to nurse them along over a long period of time as has been done, could certainly have been made by the Merrill Trust Company. At the end of a year, holding an overdue note, matters were certainly subject to its direction and control. That bank may not have been to blame for not anticipating the severity or the length of the depression or the onset of a war with all the consequent depreciation in values; but, the stockholders of the defendant, who by the terms of the agreement had in effect surrendered all direction over it to the other bank, should not for the benefit of that other bank be charged with the responsibility for decisions which they did not have the power to control. We discuss these aspects of the matter because we think they have a very distinct bearing on the discretion which in our opinion the sitting justice had to dismiss this bill.

Counsel claim that the plaintiff could in this instance demand the appointment of the receiver as a matter of right. This right it is claimed is given by the statute, the essential part of which reads as follows, Rev. Stat. 1930, Ch. 57, Sec. 52:

"*Sec. 52. Commissioner may apply for injunction to restrain insolvent corporation; powers and duties of the justice in such cases; may appoint receivers, who shall report annually; duties of commissioner and attorney-general. R. S. c. 52, sec. 54. 1923, c. 144, sec. 52.* If, upon examination of any such corporation, the bank commissioner is of the opinion that it is insolvent, or that its condition is such as to render its further proceedings hazardous to the public or to those having funds in its custody, he shall apply, or if, upon such examination, he is of the opinion that it has exceeded its powers or failed to comply

with any of the rules, restrictions, or conditions provided by law, he may apply to one of the justices of the supreme judicial court or of the superior court to issue an injunction to restrain such corporation in whole or in part from proceeding further with its busines until a hearing can be had. Such justice may forthwith issue process for such purpose, and after a full hearing of the corporation, may dissolve or modify the injunction or make the same perpetual, and make such orders and decrees to suspend, restrain, or prohibit the further prosecution of its business as may be needful in the premises, according to the course of proceedings in equity; and he may appoint one or more receivers or trustees to take possession of its property and effects, subject to such rules and orders as are from time to time prescribed by the supreme judicial court or the superior court, or by any justice thereof in vacation."

If we understand the argument of counsel, it is that if a bank is insolvent the bank commissioner must bring a bill in equity for its liquidation. In short he has no alternative under the statute. Attention is called in this connection in their brief to the use of the word "shall" in the first part of the section and to the later use of the word "may" when the statute refers to the authority given to the bank commissioner to bring a bill if the bank "has exceeded its powers or failed to comply with any of the rules, restrictions, or conditions provided by law. . . ." In the first instance counsel say that there is compulsion on the bank commissioner, in the second the statute confers on him an authority which he may or may not use as he sees fit.

This court has, however, repeatedly held, in accordance with well recognized principles, that there is more to a statute than mere words. If it is to have flesh and blood and life it must be construed in the light of the purpose which the legislature had in mind in enacting it. What may be within its letter may not be within its spirit. *Inhabitants of the Town of Ash-*

land v. *Wright*, 139 Me., 283, 29 A. (2d), 747; *Perkins* v. *Kavanaugh*, 135 Me., 344, 196 A., 645; *State* v. *Day*, 132 Me., 38, 165 A., 103; *Carrigan* v. *Stillwell*, 99 Me., 434, 59 A., 683, 68 L. R. A., 386; *Landers* v. *Smith*, 78 Me., 212, 3 A., 463; *Holmes* v. *Paris*, 75 Me., 559.

The purpose of the statute now before us seems clear. It is to protect the public and particularly those who may be depositors or intend to become depositors in the bank. As was said in another connection, *Gardiner Trust Company* v. *Augusta Trust Company*, 134 Me., 191, 199, 182 A., 685, 689: "Because of the direct interest in a bank of all those who may become depositors in it and the vital concern of the general public in its proper management, the state has interposed its authority in order to define its power, to supervise its management, and in case of trouble to take over and distribute its assets." We think it was the intention of the legislature to put compulsion on the bank commissioner to take action if the continued operation of a bank would be hazardous to the public or to depositors. That is the primary purpose of the statute. To be sure there is no such qualification in the provision referring to insolvency, because it would seem to be clear that continued operation of an insolvent bank perforce would be hazardous to the public or depositors.

But the bank with which we are dealing has not been in operation for over ten years and no one claims or could claim that the public is in any danger because of the mere fact of its insolvency. Under these circumstances the statute should not be so construed as to make it mandatory on the bank commissioner to bring a bill in equity praying for the appointment of a receiver whose primary duty would be to collect the assets and distribute the proceeds among creditors, an end which has already been practically attained under the voluntary agreement entered into by the two banks.

We might at this point call attention to the fact that if the rigid construction of the statute contended for by the plaintiff is correct it would be manifestly impossible to have carried out

any such voluntary and desirable arrangement as was consummated in this instance. For if the provision of the statute is mandatory the bank commissioner would immediately have been compelled on finding insolvency to take over the assets of the bank from the hands of those entrusted with its liquidation under the agreement. He did not do so.

It is clear from the record that the bank commissioner has apparently from the time of the execution of the agreement been aware of the fact that the defendant was insolvent. Certainly he has had this knowledge since 1936 when an examination was made. No action was then thought necessary because neither the rights of the public nor of depositors were in any danger. The very failure of the bank commissioner to act then is utterly inconsistent with the claim which through his counsel he now presents to this court. We do not think that he was recreant in his duty for his failure to act when he knew of insolvency because we construe the statute as he then did and does not seem to do now.

Even if we accept the construction claimed by the plaintiff's counsel that the bank commissioner must bring the bill for an injunction and for the appointment of a receiver, we should like to ask where is there found anything in the statute which compels the court to grant that prayer? Is the discretion of the court which it has in other cases of receivership taken from it? Perhaps here we shall be permitted to turn to the wording of the statute on which so much reliance has been placed. Though the statute reads that the bank commissioner "shall" apply for an injunction to one of the justices of the supreme judicial court, yet in discussing the action to be taken by the court it says: "Such justice may forthwith issue process" . . . "may dissolve or modify the injunction or make the same perpetual" . . . "and he may appoint one or more receivers." How can we possibly construe this language so as to take away from the justice sitting in equity the wise discretion which he has in such cases and to read into it the meaning that he must grant the prayer of the bill?

We have here an insistence that a receiver must be appointed, not to carry out the ordinary duties of a receiver to liquidate the assets of the bank and distribute the proceeds among creditors, but solely to bring a suit against stockholders for the benefit of one creditor who under the terms of a voluntary agreement to all intents and purposes has had it in its power for more than a decade to direct the manner in which the assets of this bank should be disposed of. The statute does not require the court to appoint a receiver under such circumstances as this. The discretion of the sitting justice in refusing to do so was we think wisely exercised.

*Appeal dismissed.*
*Decree affirmed.*