JAMES M. ACHESON ET AL.

*vs.*

ERNEST H. JOHNSON, STATE TAX ASSESSOR

Kennebec.    Opinion, February 20, 1952.

*Sanford L. Fogg,* for appellant.

*Boyd L. Bailey, Assistant Attorney General,*
*Miles P. Frye, Assistant Attorney General,* for appellee.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J. This is an appeal by James M. Acheson and Mary L. Acheson doing business as Capital City Hotel Co. (Augusta House) from the decision of Ernest H. Johnson, State Tax Assessor declining to abate taxes under the Sales and Use Tax Law. The case comes to the Law Court from the Superior Court for Kennebec County on report with agreed statement of facts.

The agreed facts are: James M. Acheson and Mary L. Acheson, doing business as Capital City Hotel Co., on July 1, 1951, and ever since, have operated the Augusta House, a year-round hotel open to the public, in Augusta, Maine. Neither of the appellants makes his home in the hotel. During the month of July, 1951, they purchased from Purinton Bros. Co., fuel dealers in Augusta, 16.82 tons of coal, for use in the hotel, at a price of $15.15 a ton, the total bill for the same being in the amount of $254.82. The Achesons furnished Purinton Bros. Co. a certificate stating that the coal was to be used for cooking or heating for domestic purposes and that its purchase was exempt from the sales and use tax. Such exemption certificates are authorized by the State Tax Assessor for use in certain cases and when taken in good faith relieve the seller from the duty of collecting a sales tax. The Achesons paid for the coal so purchased but neither they nor any one else has paid to Purinton Bros. Co. or to the State of Maine, any sales or use tax, or any part thereof, on the purchase of coal.

The coal was delivered to the Augusta House and was there used to heat the entire hotel building, including the lobby, dining room, halls, cocktail lounge, kitchen, lavatories, banquet rooms, bedrooms, suites and service rooms. A very small percentage of the coal was used for cooking in the hotel, most of the cooking there being done by electricity, with the exception of steam pressure cookers and coffee mak-

ers run by steam from the boilers. The heating and cooking is done for employees, as well as guests of the hotel whether there for one meal, one day, or longer. Some guests live in the hotel the year round, while others are there for but one meal or longer.

Pursuant to claimed authority granted by Section 20 of the Sales and Use Tax Law, Ernest H. Johnson, in his capacity of State Tax Assessor, on July 27, 1951 made the following ruling:

> "Fuel consumed in heating those portions of any hotel which are customarily occupied for a period of four (4) months or longer by individuals will be considered as used for domestic purposes. Fuel consumed in heating other portions of hotels, including rooms normally occupied by persons remaining for less than four (4) months at a time, will not be considered as used for domestic purposes. That portion of the fuel, other than gas and electricity, purchased by a hotel and used for domestic purposes, as noted above, would not be subject to the sales tax."

Pursuant to said ruling of July 27, 1951, the State Tax Assessor has determined that 15% of the amount of the coal used in July, 1951, was exempt from the sales or use tax, as having been used for, or intended for, heating for domestic purposes, and that the remaining 85% was subject to use tax at the rate of 2%, in a total amount of $4.33. On August 28, 1951, the State Tax Assessor assessed a use tax against the appellants in the sum of $4.33, served them with notice thereof and made demand upon them for payment.

The above percentages were arrived at from figures furnished to the State Tax Assessor by the Augusta House, based on the calendar year 1950 which was used as the base period. The correctness of the percentages arrived at by applying the State Tax Assessor's ruling to the figures is not in dispute. But the appellants contend that the ruling

itself, and the tax assessed pursuant thereto, is erroneous, unreasonable and not consistent with Section 10, subsection VII-A of Chapter 250, P. L., 1951, in that coal, oil, wood and other fuels (except gas and electricity) used for cooking or heating for domestic purposes within the meaning of said subsection VII-A, includes all such fuel used for such purposes in a hotel and that the exemption is not limited to rooms actually occupied by guests, nor to such rooms only as are occupied by guests who remain for four consecutive months or longer but that it includes fuel used to heat other portions of the hotel maintained for the comfort and convenience of the guests, as well as used for cooking in the hotel.

The State Tax Assessor contends, on the other hand, that the term "domestic purposes," as used in said subsection VII-A, is to be construed narrowly and limits the application of said subsection to fuel used to heat the "domus," or living quarters of employees, or such space as is specifically billed to guests making their home in the hotel for four consecutive months or longer.

On August 29, 1951, the said James M. Acheson and Mary L. Acheson, pursuant to Section 29 of said Chapter 250, P. L., 1951, filed a petition with the State Tax Assessor for a reconsideration of his assessment of August 28, 1951, requesting that said tax, assessed as aforesaid, be abated. Said petition did not request oral hearing.

On August 29, 1951, the State Tax Assessor considered said petition for consideration and abatement of tax and rendered his decision thereon, refusing to abate said tax, and on that same day he notified petitioners of his decision on said petition.

On August 30, 1951, the said James M. Acheson and Mary L. Acheson, pursuant to Section 30 of said Sales and Use Tax Law, appealed to the Kennebec Superior Court, October

Term, 1951, said appeal having been served on the State Tax Assessor and entered in court on that same day, to wit, August 30, 1951.

The sole issue on said appeal is whether the exemption contained in Section 10, subsection VII-A of Chapter 250, P. L., 1951 is limited, as it applies to hotels, to that portion of the fuel used for heating the living quarters of guests who occupy such quarters for four consecutive months or longer, as the State Tax Assessor has ruled, or whether said exemption applies also to fuel used for heating the rooms of all guests, irrespective of the length of their stay in the hotel, as well as other portions of the hotel maintained for the comfort and convenience of its guests and to fuel used for cooking in the hotel for guests and employees, all as contended for by appellants.

By agreement of counsel, the Legislative Record of 1951 was incorporated into the agreed statement by reference.

Section 3, Chapter 250, P. L., 1951, relating to the sales tax, provides in part:

> "A tax is hereby imposed at the rate of 2% on the value of all tangible personal property, sold at retail in this state . . . measured by the sale price. . . ."

Section 4, Chapter 250, P. L., 1951, relating to the use tax, provides in part:

> "A tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property, purchased at retail sale . . . at the rate of 2% of the sale price. Every person so storing, using or otherwise consuming is liable for the tax until he has paid the same or has taken a receipt from his seller . . . showing that the seller has collected the sales or use tax. . . ."

The appellants paid no sales tax under Section 3. They, therefore, owe a use tax under Section 4, unless the sale is

exempt. But appellants claim that the sale is exempt, under Section 10, VII-A:

"Exemptions. No tax on sales, storage or use shall be collected upon or in connection with:
VII-A. Coal, oil and wood. Coal, oil, wood and all other fuels, except gas and electricity, used for cooking or heating for domestic purposes."

Thus, if the heating of rooms used in a hotel by or for its guests, including sleeping rooms, kitchen, public dining rooms, lobby, cocktail bar, etc., is the use of fuel "for domestic purposes," the assessment is in error. If the fuel used for cooking in the hotel kitchen, whether for transient or non-transient guests, is for "domestic purposes," the assessment is in error. But if the space in question is not "domestic" and if cooking meals for the general public, including permanent residents in the hotel, is likewise not "domestic," the assessment is correct.

The fundamental rule of statutory construction is to ascertain and carry out the legislative intent. The language of the statute is "the vehicle best calculated to express the intention" but the court will "look at the object in view." *Lipman et al.* v. *Thomas,* 143 Me. 270, 273. "Some flexibility is essential in the proper interpretation of statutes." *In re Frank R. McLay,* 133 Me. 175, 177. When words used in a statute have more than one recognized meaning, the sense in which they are used by the legislature may be ascertained by a consideration of the subject matter and the object to be accomplished. "It is the spirit of the law which controls." *State* v. *Howard,* 72 Me. 459; *Tarr* v. *Davis et als.,* 133 Me. 243, 248. *Beck* v. *Corinna Trust Co.,* 139 Me. 350. Intent is sought from the language used, without supplying language or doing violence to it. Dictionary definitions are not controlling. *Donnell* v. *Joy,* 85 Me. 118; *Lyon* v. *Lyon,* 88 Me. 395, 399; *State* v. *Standard Oil Co.,* 131 Me. 63, 64. The legislature determines

what property is taxed and what is free from tax. *Greaves* v. *Houlton Water Co.*, 143 Me. 207. Whether the taxation, or exemption, is wise or unwise, is not for the court but for the legislature. *Whiting* v. *Lubec*, 121 Me. 121, 115 Atl. 896. The purpose of the legislature, if discernible from the statute, will prevail irrespective of any rule for strict construction against exemptions. *Inhabitants of Holden* v. *James*, 136 Me. 115. When a tax statute is susceptible of more than one interpretation the court will incline to the interpretation most favorable to the citizen. *Millett* v. *Mullen*, 95 Me. 400, 415; *Unemployment Commission* v. *Androscoggin et al.*, 137 Me. 154, 160. Words which have acquired a meaning through judicial definition are construed in accordance therewith. *Auburn Trust Co.* v. *Buck and Wellman*, 137 Me. 172; *Hathorn* v. *Robinson*, 96 Me. 33; *Haggett* v. *Hurley*, 91 Me. 542, 547.

The real question presented by this case involves the meaning of the words "domestic purposes" as used in this statute. The legislature has said that there is no tax on sales, storage, or use in connection with "coal, oil, wood, and all other fuels except gas and electricity, used for cooking or heating for domestic purposes." The legislature did not say "used in a home" as it might easily have said had that been its intention. It said "used" * * * "for domestic purposes." It is plain that the intent of the legislature was to exempt fuels if those fuels were used for "domestic purposes."

In its original meaning "domestic" related to home life, to household or family, but at the present time it has a much broader significance which must be determined in reference to the matter in which it appears. *Thurston* v. *Carter*, 112 Me. 361, 364. It is often used to distinguish from that which is foreign, or outside the state. It is used to distinguish from manufacturing purposes, commercial purposes, trade purposes or industrial purposes. *Paper*

*Company* v. *Town of Lisbon,* 127. Me. 161; *Kimball* v. *Water Company,* 107 Me. 467.

The purpose of the legislature to make an exemption of fuel used "for domestic purposes" is plain from the words themselves. "Domestic purposes" is also plain when considered in the light of prior decisions of this court, as well as in the light of the purposes of the whole tax law, indicated by other exemptions listed in Public Laws, 1951, Chapter 250, Section 10, such as food products (with certain exceptions), medicines, school meals, sales to hospitals and houses of religious worship *excepting where used in commercial enterprises.* There is no indication that the legislature intended or expected the construction contended for by the State Assessor. The legislature is presumed to know that the Court of Maine had defined "domestic" in at least two decisions many years before, and that the word "domestic" used by the legislature in this law, would probably be again so defined. The legislature could easily have said "in the home" instead of "for domestic purposes" if it intended such a construction. See *Kimball* v. *Water Company* (1911), 107 Me. 467, 469, 78 Atl., 865, and *Pejepscot Paper Co.* v. *Town of Lisbon* (1928), 127 Me. 161, 164, 142 Atl. 194.

If we consider the argument and rulings of the State Tax Assessor, he himself recognizes that a hotel may be "home." The Assessor has applied "home" to some rooms in a hotel but not to others. In his concept no place is "domestic" if the public is free to enter for a temporary stay. The Assessor says that the halls, the lobby, the dining room, etc., are public places and not used for "domestic purposes." The Assessor ruled, in this case, under this claimed statutory authority to make rules and regulations to carry this tax statute into effect (Public Laws 1951, Chapter 250, Section 20), that fuel consumed in heating the sleeping rooms of any hotel *customarily occupied by one individual for four*

*months or longer is exempt.* If occupied for less than four months the fuel consumed in heating would not be considered as used for domestic purposes, and would be subject to the tax. Pursuant to this ruling, the Assessor determined that 15% of the total amount of coal used in the hotel was exempt as "domestic purposes" and 85% was subject to the use tax. No objection is specifically made by the appellants to the four months ruling, or to the 85-15 percentage, although objection might well be raised. We must necessarily pass upon the validity of the ruling. It is probable that percentages may be necessary to apply to some buildings devoted to several different purposes, and proper regulations might be adopted by the Assessor, and returns made by owners or occupiers to show the use and divisions of use, which would not require expensive and actual surveys throughout the state. The legislature however, made no time limit as a criterion, and a state administrative officer has no more right to legislate than has the courts. *Anheuser-Busch, Inc. et al. v. Walton et al.,* 135 Me. 57.

Briefly stated, the position of the State Assessor seems to be that no fuel to heat any room in a hotel is exempt from use tax, unless that room is a usual hotel bedroom which must have been occupied by the individual for at least four months. If it is occupied for only three months and twenty-nine days it is not a "home," and is not entitled to heat free from the use tax. The position of the appellants is that a hotel is a "home," whether temporary or permanent, and fuel used therein is "for domestic purposes."

In the case of *Kimball v. Water Co.,* decided in 1911 and reported in 107 Me. 467, 78 Atl. 865, it was held by this court that where the charter empowered the Water Company to supply water for "domestic purposes," that the use of water to run an elevator in a hotel comes within the term "domestic purpose." The opinion by Justice Cornish states: "For what purpose is this used if not domestic? It certain-

ly is neither a trade nor an industrial purpose. The power is not employed in manufacturing or in producing any article for sale upon the market. 'Domestic' is used as the direct antithesis of commercial or industrial. The word itself, in its derivation from 'domus' a house, suggests its inherent purport. It is defined as 'belonging to the home or household, concerning or relating to the home or family,' Standard Dic.: or as Webster has it 'of pertaining to one's house or home, or one's household or family.' As water is furnished by a public service corporation to private consumers it may be used in various ways, but the purpose, whatever the method, comes within these definitions of domestic. Thus it may be used for drinking, cooking, bathing, washing, toilet, heating or sprinkling. It is not the manner of the use but its purpose which is the determining test. Is it to be used for the necessity, cleanliness, health, comfort or convenience of the house and its appurtenances or of the household? If so it is a domestic purpose. And it can make no difference whether it be a private home or a hotel, which in this sense is but a larger household, a temporary home for a greater number of people. An elevator in a private house is a convenience, in a hotel is almost, if not quite, a necessity. It promotes the personal comfort of the proprietor, his family, servants and guests. It is a domestic labor saving device and the use of water in propelling such elevator would certainly seem to be embraced in the term domestic."

"The test is an intended use which in its nature is domestic. What is the character of the purpose, not what is the character of the place of user." *Paper Company* v. *Town of Lisbon,* 127 Me. 161, 164.

It is our opinion in this case, therefore, in deciding the claims of the parties as stated in the agreed facts, that the exemption contained in Section 10, subsection VII-A of Chapter 250, Public Laws of 1951 is not limited to that por-

tion of the fuel used for heating the living quarters of guests who occupy such quarters for four consecutive months. There are no time limits. The Assessor had no authority to make time limits. The exemption applies to all fuel used for heating the rooms of all guests as well as the other portions of the hotel maintained for the use, comfort or convenience of its guests and employees.

A hotel may be a permanent home or it may be temporary. It is "a home away from home" as some hotel advertisements state. The guests are not restricted to their sleeping rooms any more than would be the invited guests in a private dwelling. The guest in this larger or "hotel home" has the right to use, and pays to use, the hall, the lobby, the dining room, and other rooms maintained for the use or comfort of guests. So too, the rooms in the hotel used and occupied by hotel servants are in "domestic" use.

The legislative intent was to include in the exemption all coal, oil, wood, and other fuels (except gas and electricity) used in a hotel for cooking or heating for "domestic purposes" and "domestic purposes" are those purposes "which in their nature are domestic." The words "domestic purposes" are used in contradistinction of such purposes as trade, manufacturing, industrial, and commercial.

*Appeal sustained.*

*Judgment for appellants.*
*Tax abated.*

*Case remanded to Superior Court for decree in accordance with this opinion.*

HERMAN J. MULLEN

*vs.*

LEWISTON EVENING JOURNAL

PER CURIAM.

The decision of this court in *Brown* v. *Guy Gannett Publishing Co.,* 147 Me. 3, 82 A. (2nd) 797, is entirely controlling of the instant case. Decision there was that a defendant, demurring to a declaration alleging that published statements were false and were published with intent to injure the plaintiff, admitted the truth of such allegations. The issue in that case was raised by defendant's exceptions to the overruling of a demurrer. We are now called upon to consider a ruling sustaining one, challenged by plaintiff's exceptions. The issue is identical, although raised in different manner.

The asserted ground for the ruling is that, in libel, "words cannot be regarded, upon demurrer to the declaration, as actionable, unless they can be interpreted as such, with * * reasonable certainty." Reliance is placed on the decision in *Wing* v. *Wing,* 66 Me. 62, 22 Am. Rep. 548. The alleged libel in that case was that the plaintiff "stole" windows from a house, and it was said that the word relied on, as used, could not be said to impute the crime of larceny. It was said, also, that where there was uncertainty as to the meaning of expressions, one resorting to an action of libel because of their use is required to make the intended meaning clear by "proper colloquium and averment."

The article now alleged to be libelous, published in a daily newspaper by the defendant, under a Waterville date line and the caption "Case Against Hallowell Man Charged with Fraud Continued," recites, in a first paragraph, that the plaintiff had entered a plea of not guilty in the Waterville Municipal Court, in a "case" charging him with "cheating

by false pretenses as the operator of a widespread 'stamp plan' of retail sales promotion," which case had been continued "to tomorrow." Seven additional short paragraphs recited his arrest, named an individual as the complainant against him, and a community bureau as the "signer" of his warrant, and recorded certain details of his "stamp plan," purporting to quote the official conducting his prosecution, in most instances.

The declaration alleges that the plaintiff had spent much time and money in developing his plan, on which he was dependent for his livelihood; that the publication of the article was made by the defendant "in reckless disregard" of the truth or falsity of the statements carried in it, "with complete lack of good faith" and "with intent to injure the plaintiff's character and reputation"; and that the injury intended had been accomplished.

Reference to the declaration discloses no allegation that the statements of the first paragraph of the published article were false, but the defendant has not plead the truth thereof, or of its supplemental statements. Its demurrer admits the falsity of many of the latter. What is more vital, perhaps, it has admitted the allegations of lack of good faith and malicious intent. Despite such admissions, it is urged in argument on its behalf that as a newspaper publisher, defendant was entitled to the privilege of publishing news concerning all prosecutions for alleged criminal offenses.

It is possible, if not probable, assuming the truth of the factual statements of the first paragraph of the alleged libel, and that all the statements in it were published in good faith, and without malice, that the plaintiff would have no remedy therefor, assuming him to be entirely free from guilt. Such, however, is not the case presented by declaration and demurrer.

Newspapers are not entitled, in commenting upon court proceedings, to publish false statements with complete lack of good faith, and with motives of personal malice, and on the record, the principle declared in *Brown* v. *Guy Gannett Publishing Co., supra*, requires that plaintiff's exceptions be sustained and defendant's demurrer overruled.

In the Trial Court the prayer of the defendant that it have leave to answer over if its demurrer was overruled was granted. The present decision carries no implication that the published article is not entitled to full protection, within the privilege recognized for a newspaper publisher on an issue properly framed. That issue can not be resolved until and unless it is raised by appropriate pleadings.

*Exceptions sustained.*

*Jerome G. Daviau,* for plaintiff.

*Clifford & Clifford,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.